ARTHUR P. DOLAN & another[1] vs. AIRPARK, INC.
& others[2] (No. 1).

Middlesex. June 9, 1987. — September 23, 1987.

Present: GREANEY, C.J., ARMSTRONG, & BROWN, JJ.

*Practice, Civil,* Summary judgment. *Corporation,* Close corporation, Sale
of assets, Officers and agents, Stockholder. *Mortgage,* Assignment.
*Deed,* Reliance in good faith. *Sale,* Real estate.

In an action by certain shareholder-directors of a corporation against indi-
vidual defendants who, as shareholders, directors and corporate officers,
allegedly had acted in concert to divert funds of the corporation by
selling its land without giving the plaintiffs notice of corporate meetings
at which the various transactions were authorized and ratified; against
the purchasers of the land, who had received a deed signed by the
corporation's vice president and its treasurer in accordance with G. L.
c. 156B, § 115; and against the assignee of a mortgage on the land, the
judge properly granted summary judgment in favor of the purchasers,
where the affidavits and depositions before him showed no genuine issue
of disputed fact as to their good faith in relying on the deed. [715-718]
Summary judgment in an action by certain shareholder-directors of a corpo-
ration was improperly granted in favor of those defendants who, as share-
holders, directors and coporate officers, allegedly had acted in concert
to divert funds of the corporation by selling its land without giving the
plaintiffs notice of corporate meetings at which the various transactions
were authorized and ratified, and in favor of the defendant assignee of
a mortgage on the land, where neither the validity of the meetings nor
the validity of the mortgage assignment was shown to be grounded on
uncontested facts. [718-720]

CIVIL ACTION commenced in the Superior Court Department
on September 29, 1982.

[1] Charles A. DiCecca.

[2] Edward L. Reardon, John E. Reardon, Marilyn J. Reardon, William
B. Beard, Jr., and Larry P. Love and David W. Love, as trustees of Atlantic
Realty Trust.

Motions for summary judgment were heard by *Edward M. Ginsburg,* J., sitting under statutory authority.

*David W. Walsh* (*Mark H. Donahue* with him) for the plaintiffs.

*John S. Legasey* for David W. Love & another.

*Joseph Stashio* for Airpark, Inc. & others.

*James A. Brescia* for William B. Beard, Jr.

ARMSTRONG, J. This action to set aside a deed and an assignment of a mortgage and for general relief was decided on motions of the various defendants for summary judgment under Mass.R.Civ.P. 56(b), 365 Mass. 824 (1974). The plaintiffs allege that the defendants acted in concert to divert corporate funds through a sale of corporate land. There are four categories of defendant. One is the corporation itself, named as a party presumably as the direct beneficiary of the sought-for rescissions and ancillary relief. The second consists of various persons — particularly the Reardon defendants — who, as shareholders, directors, and corporate officers, allegedly engineered the land sale behind the backs of the plaintiffs and without giving them notice of crucial corporate meetings. The third consists of the purchasers, the Love defendants, who are alleged to have known that the sale was unauthorized. The fourth is one Beard, who allegedly filed an invalid lien on the property to be sold, was bought off by agreeing to be named a director of the corporation, and, in that capacity, participated in the unlawful assignment to himself of the mortgage that the Loves gave to the corporation.

### The Claims Against the Loves

Because of the provisions of G. L. c. 156B, § 115, as amended by St. 1972, c. 103, § 2, we conclude that the Loves' motion for summary judgment was properly granted. The statute provides:

> "Any recordable instrument purporting to affect an interest in real estate, executed in the name of a corporation by the president or a vice president and the treasurer or an assistant treasurer, who may be one and the same person, shall be binding on the corporation in favor of a purchaser

or other person relying in good faith on such instrument notwithstanding inconsistent provisions of the articles of organization, certificate of incorporation, charter, special act of incorporation, constitution, by-laws, resolutions or votes of the corporation."

Here it is not disputed that the Loves received a deed signed by the corporation's vice president (Edward Reardon) and treasurer (John Reardon), and the pivotal question is whether their reliance on that deed was in good faith. The fact that the Loves did not rely on a clerk's certificate of a resolution purporting to authorize the sale is not determinative. A clerk's certificate, if relied on by the Loves, could validate as to them an otherwise unauthorized sale and would have done so prior to the enactment of § 115. *Commonwealth* v. *Reading Sav. Bank,* 137 Mass. 431, 440-441 (1884). See *Widett* v. *Pilgrim Trust Co.,* 336 Mass. 738, 742 (1958). Section 115 would be practically without effect unless it is possible to show good faith reliance upon a duly signed deed without showing reliance on a clerk's certificate of corporate authority. Modern conveyancing authorities assume this and no longer require a clerk's certificate for certifying title. Massachusetts Conveyancers Association Title Standard No. 11 (1982). Mendler, Massachusetts Conveyancers' Handbook § 5:5.04 (3d ed. 1984). Compare Crocker, Notes on Common Forms §§ 336, A32 (7th ed. 1955) (practice prior to the statute). We read § 115 to mean that good faith is shown where the purchaser had no reason to know, and did not know, that the designated officers who signed the deed for the corporation lacked authority to do so.

The affidavits and depositions before the judge do not show a genuine issue of disputed fact as to the good faith of the Loves and their attorney in this regard. Against the Loves' denials that they knew of the alleged corporate irregularities, the plaintiffs appear to rely on somewhat vague statements in the DiCecca affidavit to the effect that he talked with the Loves' attorney and told him of "the dispute among stockholders" and of a decision by the directors "restricting" further

land sales. The DiCecca deposition goes into greater detail concerning the conversation. DiCecca states therein that he discussed with the attorney his objection to a proposed road, the location of which would have affected slightly the boundaries of the tract the Loves were purchasing. He argued strenuously to the attorney that an alternate location of the road would be to the mutual advantage of both the land being purchased by the Loves and the land retained by the corporation. It is significant that, in the same conversation (as related in DiCecca's deposition), DiCecca stated that this was his only objection to the proposed sale and (this in response to a direct question by the Loves' attorney) that he would not attempt to block the sale. Indeed, it was DiCecca himself who, several months before, had as president of the corporation signed the purchase and sale agreement with the Loves. Nothing emerges from the depositions of the Loves, their attorney,[3] the Reardons, Beard, or even the Dolan affidavit that bears on the Loves' knowledge of corporate irregularities. On this state of the record we think that the plaintiffs have failed to show a genuine issue of disputed, material fact concerning the Loves' good faith.[4]

It is true that "[t]he granting of summary judgment in a case where a party's state of mind or motive constitutes an essential element of the cause of action is disfavored. . . . The issue of a party's intention or knowledge, raised by the pleadings, often cannot be resolved adequately from a consideration of the limited materials which accompany a summary judgment motion." *Quincy Mut. Fire Ins. Co.* v. *Abernathy,* 393 Mass. 81, 86 (1984) (citations omitted). See *Noyes* v. *Quincy Mut. Fire Ins. Co.,* 7 Mass. App. Ct. 723 (1979). However, this is not an absolute rule. See, e.g., *Slaven* v. *Salem,* 386 Mass. 885 (1982) (prisoner hanged himself; city officials denied they knew or had a reason to know of suicidal tendencies; plaintiff offered

---

[3] That the attorney for the Loves drafted the documents for the transaction did not, without more, make him also attorney for the Reardons. *Dolan* v. *Hickey,* 385 Mass. 234, 236 (1982).

[4] We have disregarded the unsworn statements in the plaintiffs' answer to a counterclaim and in their motion to amend the complaint. See *Mansfield* v. *GAF Corp.,* 5 Mass. App. Ct. 551, 552 n.3 (1977).

nothing to contrary); *A. John Cohen Ins. Agency, Inc.* v. *Middlesex Ins. Co.,* 8 Mass. App. Ct. 178 (1979) (company accused of wrongfully terminating agency; agency alleged no facts showing bad faith or lack of good faith); *Hahn* v. *Sargent,* 523 F.2d 461 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976) (alleged conspiracy to destroy a political career; no sufficient showing that prosecutor-defendants knowingly doctored testimony presented to the grand jury). Furthermore, since the Loves were not in a position where they would be presumed to know the internal affairs of the Airpark corporation, the only way they could have been on notice would have been if someone had told them something, and this would have been susceptible of proof by external evidence. Contrast *Landmark Land Co.* v. *Sprague,* 701 F.2d 1065, 1070 (2d Cir. 1983) (interlocking triangle of three banks, with a substantial fourth party whose principals were unknown); *Runyan* v. *United Brotherhood of Carpenters,* 566 F. Supp. 600, 607 (D. Colo. 1983), prior proceedings, 554 F. Supp. 859 (D. Colo. 1982) (financial secretary of a union local sued union for interfering with his contract with local; union denied knowing about plaintiff's contract).

### The Claims Against the Other Defendants

The plaintiffs' claims against the other defendants are not shown by the material before the judge on the summary judgment motions to lack factual substance. If the plaintiffs' affidavits and depositions are to be believed, as they must be at this pretrial stage of the case, see *Attorney Gen.* v. *Bailey,* 386 Mass. 367, 370-371 (1982); *Monaco* v. *Lombard Bros., post* 941, 942 (1987), the Reardons decided to deal with the opposition of the plaintiffs (who between them claimed to control fifty percent of the shares of stock in the corporation) to the land sale and the handling of the·disputed debt to Beard by calling shareholders' and directors' meetings without giving notice to the plaintiffs. Dolan claimed by affidavit in proper form to have received no notice of directors' meetings in early 1982.

A fair reading of this is that he did not receive any notice of the "emergency" meeting of April 24, 1982, and the record

of that meeting supports an inference that there was no notice. Without proper notice, the actions taken at that meeting would have been invalid, including the removal of Dolan as a director. *Hurley* v. *Ornsteen,* 311 Mass. 477, 480-481 (1942). Peairs, Business Corporations § 462 (2d ed. 1971). Indeed, under G. L. c. 156B, § 51, the board could only remove a director for cause and after a chance to be heard, unless the articles or by-laws otherwise provide. Here they do not. For summary judgment purposes, therefore, it must be assumed that Dolan was still a director, but since the corporation (as represented by the Reardons) did not regard him as such, it is reasonable to infer further that Dolan did not get notice of the directors' meeting of June 11, 1982, and that any action taken at it, including the steps to obtain a discharge of the Beard lien, was invalid. At least for the same reason (as well as director Di-Cecca's sworn assertion that he received no notice), the directors' meeting of October 20, 1983, relied on by the defendants to validate prior acts of the corporate officers, was itself inferentially invalid.[5] No other circumstances are established that could be thought to constitute a validation or ratification of the Reardons' actions. Contrast *Perkins* v. *Rich,* 11 Mass. App. Ct. 317, 321 (1981).

Similarly, it is not established by undisputed facts that the assignment of the mortgage to Beard was valid. This was done in satisfaction of Airpark's claimed debt to Beard, and it is not shown that Airpark had agreed to pay eighteen percent interest on any unpaid balance (the accumulated interest formed a substantial proportion of the amount claimed to be due). Apart from any claims of fraud, which may or may not be sufficiently supported by specific facts alleged under oath, Beard was a director of Airpark at the time he accepted the

---

[5] The directors voting at the October 20, 1983, meeting to ratify the prior acts owned 215 out of Airpark's 400 shares. See our decision today in a companion case, *Dolan* v. *Airpark, Inc. (No. 2), post* 978 (1987). However, even if this meeting should be viewed as a stockholders' meeting, it would still be void if notice was not given to Dolan and DiCecca. *Syrian Antiochean St. George Orthodox Church of Worcester* v. *Ghize,* 258 Mass. 74, 80 (1927). *Commissioner of Banks* v. *Tremont Trust Co.,* 259 Mass. 162, 171 (1927).

assignment of the mortgage in payment of the claimed debt; his dealings with Airpark must be carefully scrutinized. *Winchell* v. *Plywood Corp.*, 324 Mass. 171, 176-178 (1949). The Reardons, as shareholders of a close corporation, are held to an even higher standard of loyalty. *Donahue* v. *Rodd Electrotype Co. of New England,* 367 Mass. 578, 592-594 (1975). Regardless of what may come out at trial, we cannot say, on the materials before us, that Beard and the Reardons are entitled as a matter of law to prevail.

It may be that the plaintiffs will encounter difficulty in showing actual prejudice resulting from the procedural improprieties. Among other things, it is not claimed that the sale of land was for an unfair price, and, assuming Beard had a valid claim for the original price of the gravel, the validity of his lien may be of relatively little practical importance at this stage. Furthermore, to a considerable extent the plaintiffs' claims had their genesis in an assumption that the Reardons lacked the support of a majority of the outstanding shares for certain crucial actions. That assumption is false, not because of the zany distribution of voting rights asserted in the corporate clerk's (i.e., John Reardon's) letter of June 14, 1982, to the plaintiffs' counsel but because the Reardons had the support of Dolan's former wife, with her disputed fifteen shares.[6] It suffices at this stage to decide that the basis for the granting of summary judgment (namely, the validity of the directors' meetings that authorized and ratified certain transactions) has not been shown to be grounded on uncontested facts.

### Conclusion

As to the defendants other than the Loves, the judgments are reversed, and the case is remanded for further proceedings. The judgment dismissing the action against the defendants Love is affirmed.

*So ordered*

---

[6] See *Dolan* v. *Airpark, Inc. (No. 2), post* 978 (1987).