43 Mass. App. Ct. 145 (1997)                    145

Asian American Civic Assn. *v.* Chinese Consolidated Benevolent Assn. of New England, Inc.

ASIAN AMERICAN CIVIC ASSOCIATION *vs.* CHINESE
CONSOLIDATED BENEVOLENT ASSOCIATION OF NEW ENGLAND,
INC. (and a companion case[1] ).

No. 95-P-1928.

Suffolk. February 12, 1997. - July 11, 1997.

Present: KASS, GREENBERG, & FLANNERY, JJ.

*Practice, Civil,* Summary judgment, Reconsideration, Discovery, Amendment. *Deed,* Construction, Condition. *Real Property,* Conveyance, Restrictions, Easement. *Trust,* Creation.

In an action seeking a declaration of rights under a deed, a Superior Court judge properly decided the matter on motions for summary judgment. [148]

A deed from the city of Boston conveying real property for use as a community center did not confer rights of occupancy in perpetuity on a neighborhood association named in a proposal letter referenced in the deed describing intended uses, where the association was a stranger to the deed and where, in any event, the language of the deed with respect to the use of the premises did not support the association's claim to occupancy based on purported restriction, condition, covenant, easement or implied trust. [148-152]

In a civil action there was no abuse of discretion, hence no error, in the judge's denial of one party's motion for reconsideration of the judge's decision on summary judgment. [152-152]

In a civil action, the judge's denial of a motion to compel discovery was not an abuse of discretion where the documents sought were irrelevant. [152]

In a civil action, the judge did not abuse his discretion in denying a party's motion to add a third-party claim, where the claim would have been futile in the circumstances and where it was prejudicially late. [152-153]

At the trial of a civil action, no error appeared in the trial judge's evidentiary rulings and the evidence supported the judge's findings. [153]

CIVIL ACTIONS commenced in the Superior Court Department on October 29, 1992, and November 5, 1992, respectively.

---

[1]The companion case is a summary process, i.e., eviction, action brought by Chinese Consolidated Benevolent Association of New England, Inc., against Chinese American Civic Association, Inc. During the pendency of the proceedings, the Chinese American Civic Association changed its name to Asian American Civic Association. The two cases were consolidated for trial.

146            43 Mass. App. Ct. 145 (1997)

Asian American Civic Assn. *v.* Chinese Consolidated Benevolent Assn. of New England, Inc.

Motions for partial summary judgment were heard by *Robert L. Steadman*, C.J., and the case was tried before *Richard E. Welch III*, J.

*Brian Whiteley* for the Asian American Civic Association.

*Christine A. Faro* for the Chinese Consolidated Benevolent Association of New England, Inc.

KASS, J. A deed from the city of Boston conveying real property at 90 Tyler Street — the former Quincy School — to the Chinese Consolidated Benevolent Association of New England, Inc. (CCBA), recited that the grantee "agrees to devote the property to the uses specified in its proposal for the purchase of the property dated February 4, 1983." On the basis of the quoted language, the Asian American Civic Association, Inc. (AACA), claims the right to occupy in perpetuity a portion of the old Quincy Elementary School building. A judge of the Superior Court, considering the case on cross motions for partial summary judgment, ruled that the instrument of conveyance from the city did not confer rights of occupancy upon AACA. Ultimately judgments entered in favor of CCBA on the occupancy question, certain collateral claims in that action, and in the eviction action (see note 1).[2] AACA appeals from both judgments. We affirm.

The deed from the city, dated March 3, 1983, ran to CCBA only. Following a description of the property, there appeared in the deed the paragraph we referred to above, and which we now set forth in full:

> "The Grantee, for itself, its successors and assigns, agrees to devote the property to the uses specified in its proposal for the purchase of the property dated February 4, 1983, and to use its best efforts to comply with plans and specifications for the renovation prepared by Jung/Brannen Associates and previously submitted to the Grantor."

The letter of February 4, 1983, was not strapped to the deed or otherwise recorded with the registry of deeds. A copy was produced with the summary judgment materials. It is a four-page, single-spaced document, with pro forma development and

---

[2]The judgment for CCBA in the summary process case, entered on the basis of a jury verdict, was $47,357.88.

operating budgets attached. The second paragraph of the letter speaks on the subject of use as follows:

> "The Old Quincy School will be renovated and converted to a multi-purpose Chinese Community Center that will provide accommodation for the Association itself and a variety of social service, employment training and cultural programs and activities."

Thereafter, the February 4 letter describes the scope and cost of the renovation work, following which there is a description of the cultural and civic activities that CCBA carries on and where in the building they will be located. On page three, the letter, getting to details, states, among other things, that:

> "The Chinese American Civic Association will occupy the front section of the first floor of the main building. The space, approximately 2,142 square feet in area, will house the Multi-Service Center, the Sampan, the neighborhood employment office, and the administrative office for the adult education classes. The first year rent for the space will be $12,000 or $5.60 per square foot."

Following that paragraph, the letter describes anticipated occupancy by the Kwong Kow Chinese School, various adult education and vocational programs run by CCBA and AACA, and classroom use by each organization. CCBA, the Kwong Kow Chinese School, and a community development block grant from the city were listed in the letter as the sources of funds for the estimated $520,000 in development costs. AACA did not contribute to the building project.

Although the deed referred to the February 4 proposal letter, the authorizing vote of the public facilities commission of the city of Boston, which was recorded, said no more than that "[T]he Director be, and he hereby is, authorized to execute and deliver an instrument conveying [the locus] to the [CCBA], in consideration of the sum of One Dollar ($1.00)."

On August 1, 1984, seventeen months after CCBA acquired the locus, it entered into a written lease with AACA for space in what the lease describes as "the Chinese Community Center (formerly known as the Old Quincy School)." That lease had a term of three years, ending July 31, 1987. By the time of expira-

tion of the lease term, CCBA, as landlord, was asserting delinquency on the part of AACA, the tenant, in its rent. For the next five years, AACA continued to occupy space at the locus as it bargained fitfully with CCBA about a new lease. Those negotiations went nowhere, and on September 24, 1992, CCBA served AACA with a notice to quit. AACA arrived first at a courthouse door with its declaratory judgment action.

1. *Susceptibility of disposition on summary judgment.* When the question is one of intention of the parties, summary judgment is often not an apt device to resolve the dispute because there needs to be some weighing of evidence. See *Quincy Mut. Fire Ins. Co.* v. *Abernathy,* 393 Mass. 81, 86 (1984); *Dolan* v. *Airpark, Inc. (No.1),* 24 Mass. App. Ct. 714, 717 (1987). This is not, however, an absolute rule. *Id.* at 717. In this case, for example, we think the language of the relevant documents, as well as statutory and common law principles of conveyancing, compel the conclusion that the deed from the city of Boston to CCBA did not confer upon AACA a right to occupy space at the community center building at 90 Tyler Street.

2. *Claim as based on a restriction in the deed.* In seeking to establish rights under the deed from the city to CCBA, AACA suffers from the initial embarrassment of not being a party to it. It remains the general rule in Massachusetts that a possessory right said to inhere in a deed cannot successfully be maintained by a person who is a stranger to the deed. *Hodgkins* v. *Bianchini,* 323 Mass. 169, 172 (1948). *Patel* v. *Planning Bd. of N. Andover,* 27 Mass. App. Ct. 477, 481 (1989). See G. L. c. 184, § 27(*a*), requiring that a person who seeks enforcement of a restriction be a party to the recorded instrument that imposes the restriction. It may be said that the reference in the deed to CCBA's letter of February 4, 1983, to the public facilities commission attains for AACA the requisite affinity. Again, however, there is difficulty. The reference in the deed is indefinite in both a nontechnical and a technical sense. In a nontechnical sense the reference is indefinite because it does not even identify to whom the February 4 letter was addressed, although ascertaining the recipient of the letter does not require either attenuated inference or a high order of detective work. Yet the reference — which does not mention AACA — is impermissibly vague when viewed in relation to the purpose of the recording system to broadcast with some certainty restrictions to which real estate is

subject. See *McCusker* v. *Goode,* 185 Mass. 607, 611 (1904); *Houghton* v. *Rizzo,* 361 Mass. 635, 643 (1972); *Popponesset Beach Assn.* v. *Marchillo, Inc.,* 39 Mass. App. Ct. 586, 589 (1996).

The reference is indefinite in the technical sense of G. L. c. 184, § 25, inserted by St. 1959, c. 294, § 1, which provides that, "No indefinite reference in a recorded instrument shall subject any person not an immediate party thereto to any interest in real estate . . . ." An indefinite reference, under the statute, is, broadly speaking, one to an instrument that is not recorded in due course.[3] See Crocker's Notes on Common Forms § 805 (8th ed. 1995). For purposes of this case, the first of the definitions of what constitutes an indefinite reference is particularly pertinent, viz., "a recital indicating directly or by implication that real estate may be subject to restrictions, easements, mortgages, encumbrances or other interests not created by instruments recorded in due course." G. L. c. 184, § 25 (1). To be sure, CCBA is a party to the recorded instrument in

---

[3]General Laws c. 184, § 25, so far as material, provides: "No indefinite reference in a recorded instrument shall subject any person not an immediate party thereto to any interest in real estate, legal or equitable, nor put such person on inquiry with respect to such interest . . . . An indefinite reference means (1) a recital indicating directly or by implication that real estate may be subject to restrictions, easements, mortgages, encumbrances or other interests not created by instruments recorded in due course, (2) a recital or indication affecting a description of real estate which by excluding generally real estate previously conveyed or by being in general terms of a person's right, title or interest, or for any other reason, can be construed to refer in a manner limiting the real estate described to any interest not created by instruments recorded in due course, (3) a description of a person as trustee or an indication that a person is acting as trustee, unless the instrument containing the description or indication either sets forth the terms of the trust or specifies a recorded instrument which sets forth its terms and the place in the public records where such instrument is recorded, and (4) any other reference to any interest in real estate, unless the instrument containing the reference either creates the interest referred to or specifies a recorded instrument by which the interest is created and the place in the public records where such instrument is recorded. No instrument shall be deemed recorded in due course unless so recorded in the registry of deeds for the county or district in which the real estate affected lies as to be indexed in the grantor index under the name of the owner of record of the real estate affected at the time of the recording. This section shall not apply to a reference to an instrument in a notice or statement permitted by law to be recorded instead of such instrument, nor to a reference to the secured obligation in a mortgage or other instrument appearing of record to be given as security, nor in any proceeding for enforcement of any warranty of title."

which the reference to the proposal letter appears and, therefore, is not eligible to raise a defense based on G. L. c. 184, § 25. See the discussion in Eno & Hovey, Real Estate Law § 2.16 (1995). The technical deficiencies of the reference, however, assist us in considering whether to give the reference the specific and long lasting meaning for which AACA contends.

Even were AACA not confronted with the difficulties we have so far discussed, the language of the deed restriction does not support the position AACA takes. The deed speaks in terms of the uses to which CCBA shall put the premises, not who shall occupy them. That use is as a multi-purpose Chinese community center. We think it determinative that the vote of the public facilities commission to convey the property on behalf of the city of Boston and the deed itself (the deed bears the signed approval of the mayor of Boston) mention no user or person other than CCBA. Courts interpret a deed on the basis of its language, of course, and that language in the light of attendant circumstances. *Bessey* v. *Ollman*, 242 Mass. 89, 91 (1922). *Harrison* v. *Marcus*, 396 Mass. 424, 429 (1985). *Murphy* v. *Donovan*, 4 Mass. App. Ct. 519, 527 (1976). Here the significant attendant circumstances are those of absence: the absence of a detailed municipal plan, compare *Commissioner of the Dept. of Community Affairs* v. *Boston Redevelopment Authy.*, 362 Mass. 602, 604-609 (1972), and *Boston Redevelopment Authy.* v. *Charles River Park "C" Co.*, 21 Mass. App. Ct. 777, 778-779 (1986), *S.C.*, 402 Mass. 1004 (1988); the absence of mention of AACA in the deed; and the absence of any binding document concerning AACA's occupancy which the city had examined and impliedly approved.

It is not plausible that the city would have wished to import into the deed the identities of specific tenants, specific rent, specific borrowing and grants, and specific architectural details — all of which are adverted to in the proposal letter.

How parties act, as a practical matter, is also a guide to interpretation of a deed. *Commercial Wharf E. Condominium Assn.* v. *Waterfront Parking Corp.*, 407 Mass. 123, 132 (1990). *Murphy* v. *Donovan*, 4 Mass. App. Ct. at 527. Crocker's Notes on Common Forms § 215 (8th ed. 1995). Here, CCBA and AACA negotiated a three-year lease, with no extension options, hardly an arrangement that implies long-term occupancy rights on the part of AACA.

3. *Claim based on condition.* It is enough to say that if the grant of the deed by the city had been on condition that AACA would be an occupant of the premises, then it would be for the city to enforce the condition. See *Dyer* v. *Siano*, 298 Mass. 537, 539 (1937). Nor does the language of the deed suggest a condition. In any doubtful case, the interpretation of language as a condition is disfavored. *Tristam's Group, Inc.* v. *Morrow*, 22 Mass. App. Ct. 980, 981 (1986). Crocker's Notes on Common Forms § 270 (8th ed. 1995).

4. *Claim based on covenant in the deed.* When language in a deed expresses the idea that the grantee shall do a certain thing and the grantee accepts the deed, the law implies a promise by the grantee so to do. *Locke* v *Homer*, 131 Mass. 93, 102 (1881). Crocker's Notes on Common Forms § 248 (8th ed. 1995). The deed to CCBA recites that CCBA agrees to use the premises conformably with its proposal letter. By accepting the deed, CCBA promised to do so. That principle affords AACA no better rights, however, than application of the theories previously discussed, because the promise runs to the grantor, the city, and, as we have seen, the obligation to act in accordance with the proposal letter meant to use the premises as a community center.

5. *Rights based on a theory of easement.* Words implying an easement are not present in the deed. We do not imply an easement from the circumstances because there is no showing that occupancy by AACA was necessary to the enjoyment of the premises by either CCBA or the city as grantor. Compare *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.*, 284 Mass. 100, 105 (1933); *Boudreau* v. *Coleman*, 29 Mass. App. Ct. 621, 630 (1990). We leave to one side AACA's difficulty as a stranger to the deed in asserting rights to an easement.

6. *Rights based on a theory of implied trust.* AACA argues that the city, when it inserted a reference to CCBA's February 4, 1983, proposal letter in the deed, manifested an intent to impress a trust on the premises in favor of AACA. We are of opinion that the reference is well short of the unequivocal language required to show that real estate conveyed to one person is held in some manner on behalf of another. See *Cooney* v. *Montana*, 347 Mass. 29, 34-35 (1964); *Ventura* v. *Ventura*, 407 Mass. 724, 726 (1990); *Valley Forge Hist. Soc.* v. *Washington Memorial Chapel*, 330 Pa. Super. 494, 504-505

(1984), on which AACA particularly relies, dealt with an express trust and concerned only the reach of that trust.

7. *Motion to reconsider.* AACA moved for reconsideration of the decision of the Superior Court judge on the basis of "newly discovered evidence," namely, an affidavit from the director of the public facilities commission of the city of Boston, i.e., the individual who executed the deed for the city. First, the affidavit could not be characterized as newly discovered evidence. There was no suggestion that the director had previously been unavailable. The affidavit was the product of an afterthought stimulated by the judge's memorandum of decision. Second, on our analysis of the documents, the expectations of a city official, never translated into the documents of conveyance, would not alter interpretation of the deed. There was no abuse of discretion and, hence, no error in the denial of the motion to reconsider.

8. *Denial of motion to compel discovery.* In October, 1993, AACA moved to compel the production of documents in the hands of CCBA, including CCBA's financial statements from 1987 to 1993, and documents relating to CCBA's plans for the community center. A Superior Court judge denied the request. The question for us is whether that denial was an abuse of discretion. *Bishop* v. *Klein,* 380 Mass. 285, 288 (1980). It was not.

The documents sought were irrelevant. CCBA's costs of operations at the premises did not assist in determining AACA's occupancy rights. That information could only have been pertinent — as a guide to fair occupancy charges — had AACA been able to establish a right of occupancy. The plans themselves could not help AACA for the reasons previously set forth in this opinion.

9. *Leave to amend complaint.* Some six months after the judge had decided the occupancy issue, AACA moved to amend its complaint to add a third-party contract claim. The judge who had decided the primary part of the case had retired, and the motion to amend came before another Superior Court judge, who denied the motion 1) because it would be futile and 2) because it was prejudicially late.

Although a contract claim may exist independently of a covenant-based claim, *Whitinsville Plaza, Inc.* v. *Kotseas,* 378 Mass. 85, 99 (1979), in the context of this case, the distinction

is illusory. AACA's contract claim was based on the identical documents already examined and interpreted — correctly — by the judge who considered the motion for summary judgment. Analysis of the documents would not have led to a different result in another context.

As to the issue of timeliness, the motion to amend came two years after the complaint had been filed, as noted, more than one-half year after an order on the summary judgment motions, and but a week before trial was to begin on the remaining issues.

The judge did not abuse his discretion in denying the motion to amend. *Mathis* v. *Massachusetts Elec. Co.*, 409 Mass. 256, 264 (1991).

10. *Other issues.* We have considered AACA's claims of error in evidentiary rulings in the trial of the summary process case, which included AACA's affirmative defense of premature commencement of the summary process action. The judge acted well within his discretion in concluding that testimony offered through the former director of the public facilities commission would not assist the jury on the eviction and rent due issues. See *Commonwealth* v. *Sherry*, 386 Mass. 682, 693 (1982). Evidence concerning when CCBA had repaid loans in connection with renovation of the premises was similarly so marginally relevant that it was properly excluded.

The evidence supported the judge's findings that the lease entered into by the parties was the product of negotiation between sophisticated persons, involving no misrepresentation. The failure to make a new and longer term lease when the original lease expired was neither more nor less than a failure to come to agreement. See *Pappas Indus. Parks, Inc.* v. *Psarros*, 24 Mass. App. Ct. 596, 600 (1987). The judge who heard AACA's claim under G. L. c. 93A had ample record basis for finding that there had been no c. 93A violation.

*Judgments affirmed.*