GREEN, C.J.
*409 The parties to this action together own property located at 172-174 Shrewsbury Street in Worcester (property). The plaintiff, Gail F. Sullivan, holds her 2/9 interest as the result of a property division incident to her divorce from her former husband, who purchased the property with the defendant Philip P. Palmieri in 1986. As the parties' relations deteriorated, Sullivan filed a petition in the Land Court, seeking to partition the property. In response, the defendants challenged the jurisdiction of the Land Court, claiming that the property is ineligible for partition because the relationship among the parties is in substance and actuality as partners in a partnership, and jurisdiction over dissolution of a partnership is in the Superior Court rather than the Land Court. A judge of the Land Court agreed with the defendants, dismissing the plaintiff's petition for want of subject matter *410 jurisdiction. We conclude that the petition should not have been dismissed and remand the matter for further proceedings.
Background. We summarize the evidence in the record before us.[2] By deed dated February 5, 1986, Louis C. DiNatale and Palmieri acquired title to the property. DiNatale and Palmieri financed their purchase in part by a mortgage note made jointly and severally by them to Guaranty Bank and Trust Company, secured by a mortgage on the property.[3] The deed did *277 not specify whether the two men acquired their interests as joint tenants, tenants in common, or otherwise. However, the two obtained a policy of title insurance from Chicago Title Insurance Company insuring their interests as tenants in common. DiNatale and Palmieri subsequently conveyed a 5/9 interest in the property to the father of the defendant Robert M. Lawlis by deed dated June 9, 1995, and duly recorded.[4] Lawlis's father acquired his interest in the property as part of a "like-kind exchange" under the Internal Revenue Code, 26 U.S.C. § 1031 (1994) (as in effect when Lawlis, DiNatale, and Palmieri signed the like-kind agreement). In the agreement for that conveyance, DiNatale and Palmieri represented that they were the owners of the property "in fee simple and in common." Sullivan acquired an undivided 2/9 interest in the property by deed dated January 13, 2006, and duly recorded, as the result of a property division incident to her divorce from DiNatale. The deed recites that it was supported by consideration of less than $100. Like the 1986 deed pursuant to which DiNatale and Palmieri first acquired their interests in the property, the 2006 deed to Sullivan includes no statement describing or defining the nature of the estate conveyed.
There is no written partnership agreement among the parties, nor is there a business name certificate filed in the name of a partnership. However, the record reflects that the property is a commercial building, leased to commercial tenants. Rents from *411 the building are deposited into one of various bank accounts in various names; the record includes conflicting information about whether all of the accounts are joint or whether Palmieri is the sole authorized signatory on one or more of them.[5] According to the judge's memorandum of decision, various leases of the property refer to the landlord in different ways, sometimes as "Palmieri, Dinatale & Lawliss" [sic ], sometimes as Louis DiNatale and Philip Palmieri, and other times as Palmieri and the Lawlis Trust.[6] Palmieri manages the property, collecting rents, paying utilities and other expenses of the property, hiring contractors to maintain the property, and taking other actions as necessary to manage the property. As funds are available in the bank account, Palmieri makes periodic distributions to himself, Lawlis, and Sullivan, in proportion to their respective interests in the property.
The question whether the parties have formed a partnership has arisen in prior court proceedings, if somewhat obliquely. In a civil dispute brought in the Worcester Division of the District Court Department by Lawlis, DiNatale, and Palmieri against a tenant of the property, the tenant moved to vacate an agreement for judgment signed only by Palmieri on the *278 ground that Palmieri was without authority to bind the other two plaintiffs. In that action, a District Court judge denied the tenant's motion; the defendants assert that the order of denial signifies agreement with Palmieri's argument that, as a partner, he was authorized to bind the others.[7] For her part, Sullivan has referred to "the partnership" in certain correspondence with Palmieri and Lawlis, and referred to her *412 former husband and Palmieri as "partners" in filings made in the Probate and Family Court incident to her divorce from DiNatale. In his memorandum of decision, the motion judge observed that "[n]o partnership tax returns or Schedule K-1's have ever been filed. The defendants contend that no such returns or schedules are required for a partnership with this few partners so long as the income and expenses are properly reflected on Schedule E's, but have not cited any authority supporting that contention."[8]
Discussion. Partition is historically an equitable remedy rooted in common law that has since been reformed and modified by statute. See O'Brien v. Mahoney, 179 Mass. 200, 203, 60 N.E. 493 (1901). It is a division between two or more persons of property, effected by the setting apart of their interests so that they can enjoy and possess the property in severalty, or by a sale of the whole and the awarding to each their share of the proceeds. See G. L. c. 241, §§ 1, 4, 31 ; Delta Materials Corp. v. Bagdon, 33 Mass. App. Ct. 333, 337-338, 599 N.E.2d 250 (1992). Properties owned in trust are not subject to partition, see Rolland v. Hamilton, 314 Mass. 56, 60, 49 N.E.2d 436 (1943), nor are those held in partnership, see Webber v. Rosenberg, 318 Mass. 768, 769, 64 N.E.2d 98 (1945). For cotenants, however, partition is a matter of absolute right; it is not dependent on the consent of any of the cotenants or the discretion of the court. See Crocker v. Cotting, 170 Mass. 68, 70, 48 N.E. 1023 (1898) ; O'Brien v. Mahoney, supra at 203-204, 60 N.E. 493. In Massachusetts, partition is governed by G. L. c. 241, and "[a]ny person, except a tenant by the entirety, owning a present undivided legal estate in land" may petition for the partition of such interest. G. L. c. 241, § 1. A petition for partition *413 may be filed either in the Probate and Family Court or the Land Court. G. L. c. 241, § 2.
In the present case, the deed under which the parties acquired their title to the property did not specify how they *279 would hold their title. In the absence of language in a deed specifying otherwise, a conveyance of land to two or more persons creates "an estate in common and not in joint tenancy." See G. L. c. 184, § 7. However, the form of property ownership may be other than as provided under the deed itself, based on evidence of a contrary intent of the parties. In particular, title to property acquired with partnership funds for partnership purposes is presumed to be partnership property, even though the deed conveys title in the names of one or more individuals. See Diranian v. Diranian, 55 Mass. App. Ct. 605, 609, 773 N.E.2d 462 (2002), citing G. L. c. 108A, § 8(2). See also Fall River Whaling Co. v. Borden, 10 Cush. 458, 461, 64 Mass. 458 (1852) ("[L]and, whatever the aspect of the legal title, may nevertheless be proved in equity to be part of the joint stock of a copartnership, and as such, liable to all the equitable conditions of partnership property"). That partnership property may be held in the names of one or more of the partners, rather than in the name of the partnership, is expressly contemplated by G. L. c. 108A, § 10.
"To determine whether or not a partnership exists, the Legislature has enacted a set of rules that may be applied to the circumstances. G. L. c. 108A, § 7. In addition, other factors may be considered on the issue of the existence or nonexistence of a partnership. See Shain Inv. Co. v. Cohen, 15 Mass. App. Ct. 4, 9, 443 N.E.2d 126 (1982). Those factors include, among others, (1) an agreement by the parties manifesting their intention to associate in a partnership (2) a sharing by the parties of profits and losses, and (3) participation by the parties in the control or management of the enterprise." Fenton v. Bryan, 33 Mass. App. Ct. 688, 690-691, 604 N.E.2d 56 (1992).[9] Notably, pursuant to G. L. c. 108A, § 7(2), "[j]oint tenancy, tenancy in common, tenancy by the entireties, joint property, *414 common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property." The existence of a partnership is a question of the intent of the parties; whether a partnership arises "depends upon their intent to associate as such," Shain Inv. Co. v. Cohen, supra at 7, 443 N.E.2d 126, and whether the parties acted in ways "as would be normally expected of partners," *280 Boyer v. Bowles, 310 Mass. 134, 137, 37 N.E.2d 489 (1941).[10]
Conflicting evidence concerning the existence of a partnership must be resolved by a finder of fact. See Fenton v. Bryan, supra at 691, 604 N.E.2d 56. Cases in which the intent, motive, or state of mind of the parties is at the heart of the case are typically inappropriate for summary judgment. See Noyes v. Quincy Mut. Fire Ins. Co., 7 Mass. App. Ct. 723, 726-727, 389 N.E.2d 1046 (1979). A person's intent is a question of fact "to be determined from his declarations, conduct and motive, and all the attending circumstances." Galotti v. United States Trust Co., 335 Mass. 496, 501, 140 N.E.2d 449 (1957), quoting from Casey v. Gallagher, 326 Mass. 746, 749, 96 N.E.2d 709 (1951). "Frequently, the pleadings, affidavits, and other submitted materials render necessary a further exploration of the significant facts and a decision on *415 these 'state of mind' issues by a trier of fact who has heard and evaluated all relevant evidence." Quincy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81, 86, 469 N.E.2d 797 (1984). However, even in a case where state of mind is an issue, it is incumbent on the party opposing summary judgment to file sufficient materials to raise a jury question in order to avoid entry of summary judgment. See Asian Am. Civic Assn. v. Chinese Consol. Benevolent Assn. of New England, Inc., 43 Mass. App. Ct. 145, 148, 681 N.E.2d 882 (1997) (language of deed and other documents, and statutory and common-law principles of conveyancing compelled conclusion that deed did not confer right to occupy space in building).
The evidence in the record of the present case leaves us with considerable doubt whether the parties are in a partnership. To be sure, there are numerous indicia consistent with the existence of a partnership, including the shared ownership and operation of the property and the sharing of profits therefrom. However, the presence of such factors does not by itself establish the existence of a partnership. See G. L. c. 108A, § 7(2), (3). And there are a variety of indicia calling into question whether a partnership existed, including the manner in which the parties held themselves out to others, including tenants and taxing authorities, and the policy of title insurance Palmieri and DiNatale obtained when they first acquired the property, insuring their interests as tenants in common. In particular, the like-kind exchange by which Lawlis's father acquired his interest in the property is incompatible with a conclusion that the property was owned by a partnership rather than by Palmieri and DiNatale as cotenants; under the Internal Revenue Code in effect at the time, partnership property was ineligible for a like-kind exchange. See 26 U.S.C. § 1031(a)(2)(D) (1994). Viewing the evidence, as we must, in the light most favorable to the plaintiff, and drawing all inferences in her favor, see Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 680, 46 N.E.3d 24 (2016), we conclude that genuine issues of material fact preclude a conclusion *281 that the property is held by the parties in partnership as a matter of law.
We also observe that there appear to be few advantages from the perspective of judicial economy in resolving the question on summary judgment. As described in the introduction, the question whether the property is held in partnership or in common arose in the context of the question of the Land Court's jurisdiction over the plaintiff's petition. But Massachusetts courts have long discouraged dismissal in circumstances where the question of jurisdiction arises from distinctions among the various departments *416 of the Trial Court. "[W]hen a court of limited jurisdiction is confronted with a case over which its jurisdiction is doubtful or lacking, the court should not dismiss the case out of hand; rather, 'the proper procedure is for the judge to ask the [Chief Justice of the Trial Court] to transfer the case, or the judge, or both, to the appropriate department of the Trial Court.' " Arno v. Commonwealth, 457 Mass. 434, 446, 931 N.E.2d 1 (2010), quoting from Konstantopoulos v. Whately, 384 Mass. 123, 129, 424 N.E.2d 210 (1981).[11] In the present case, further proceedings will be required to resolve the parties' respective rights and remedies (whether in dissolution of a partnership if one exists, or partition of the property if it is held in common). The parties also have asserted various claims over which the Land Court is without jurisdiction.[12] It is likely that much of the evidence presented on the question of the existence or nonexistence of a partnership will overlap evidence presented on the parties' other claims. We note as well that if the parties are found to hold title to the property as tenants in common rather than as partners, the Superior Court is without jurisdiction over the partition to which the plaintiff would then be entitled. Accordingly, we vacate the judgment and, consistent with the guidance furnished in Konstantopoulos v. Whately, supra, we remand this case to the Land Court with instructions to the judge to ask the Chief Justice of the Trial Court "to transfer the case, or the judge, or both, to the appropriate department of the Trial Court," with authority in any event to adjudicate all claims of the parties, whether incident to partition of the property or dissolution of a partnership.[13]
So ordered.

Though the parties have filed separate record appendices, the materials in each include references to numerous exhibits that are not included, but which apparently were a part of the record before the Land Court judge. Though our ability to evaluate the presence or absence of genuine issues of material fact is consequently impaired, our review of the record we do have, along with the description of undisputed facts contained in the memorandum of decision entered by the motion judge, supports the factual summary that follows.

DiNatale and Palmieri subsequently refinanced the property on several occasions.

Lawlis's father subsequently conveyed his 5/9 interest to an unrecorded trust identified in the deed as "The Lawlis Trust."

The accounts were in the name of "Philip Palmieri, Louis DiNatale or Robert Lawlis, John Dubsky [care of] James O'Malley CPA"; "Philip Palmieri, Palmieri Lawless & Sullivan"; "Phillip Palmieri [doing business as] Palmieri, Lawless and Sullivan"; "Philip Palmieri and Robert Lawlis"; "Phillip Palmieri and Louis DiNatale"; and "Phillip Palmieri, Louis DiNatale and Gail Sullivan."

The leases themselves are not in the record appendix submitted by either the plaintiff or the defendants, and the judge's memorandum of decision does not relate whether the various leases were executed by each person named as landlord or only one of them on behalf of a partnership. The summary in the judge's memorandum of decision does not include a description of any lease identifying Palmieri, Lawlis, and Sullivan as the landlord, and it does not suggest that any of the leases refer to the landlord as a partnership.

Alternatively, the District Court judge could have concluded that Palmieri was authorized to act on behalf of Lawlis and DiNatale, either as agent or otherwise. The record does not include the motion, Palmieri's opposition, or the order denying the tenant's motion (which the defendants describe as a marginal endorsement).

No tax returns appear in the record before us, and the defendants have not repeated in their brief in this appeal their claim before the Land Court judge that no partnership tax return is required for a partnership comprised of only three partners. But see 26 U.S.C. § 6031(a) (2012) (requiring all partnerships to file annual partnership tax return). See generally 26 U.S.C. § 761(a) (2012) (defining "partnership"). We note that 26 U.S.C. § 6698(a) (2012) allows partnerships to avoid the penalty for failure to file a return upon a showing of "reasonable cause," but it does not create an exemption from the filing requirement and it is the taxpayer's burden to establish reasonable cause. See Internal Revenue Manual § 20.1.1.3.5(2) (Nov. 21, 2017), https://www.irs.gov/irm/part20/irm_20-001-001r ("The burden of proving entitlement to relief is generally upon the taxpayer"). See also 26 U.S.C. § 6651(a)(3) (2012) (Internal Revenue Service will not impose a failure-to-pay penalty if "it is shown that such failure is due to reasonable cause and not due to willful neglect"); Shafmaster v. United States, 707 F.3d 130, 137 (1st Cir. 2013) ("The taxpayer bears the burden of proving both reasonable cause and the absence of willful neglect").

General Laws c. 108A, § 7, provides as follows:
"In determining whether a partnership exists, these rules shall apply:
"(1) Except as provided by section sixteen persons who are not partners as to each other are not partners as to third persons.
"(2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.
"(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.
"(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:
"(a ) Of a debt by instalments or otherwise,
"(b ) As wages of an employee or rent to a landlord,
"(c ) As an annuity to a widow or representative of a deceased partner,
"(d ) As interest on a loan, though the amount of payment vary with the profits of the business,
"(e ) As the consideration for the sale of the good will of a business or other property by instalments or otherwise."

See G. L. c. 108A, § 7 ; Mitchell v. Gruener, 251 Mass. 113, 123, 146 N.E. 252 (1925) ("There must be a voluntary contract of association for the purpose of sharing the profits and losses, as such, which may arise from the use of capital, labor or skill in a common enterprise, and an intention on the part of the principals to form a partnership for that purpose"); Seemann v. Eneix, 272 Mass. 189, 194, 172 N.E. 243 (1930) ("The intention of the parties is an important factor in determining whether a partnership was created"); Cardullo v. Landau, 329 Mass. 5, 8, 105 N.E.2d 843 (1952) ("[I]n the case of a partnership, the relationship ... is a matter of intent and arises only when they intend to associate themselves as such").

By St. 2011, c. 93, § 52, the Chief Justice of the Trial Court was substituted for the Chief Justice for Administration and Management, who previously was designated to effect such interdepartmental assignments and transfers.

For example, the plaintiff's verified complaint includes, in addition to the request for partition and several counts for waste of the property, counts for conversion of funds held in bank accounts and fraud. (Although the plaintiff withdrew, without prejudice, all claims other than her request for partition during the initial case management conference, her brief indicates that she intends to reinstate them.) The defendants' separate complaint, filed in the Superior Court in Worcester County after commencement of this action, includes counts for dissolution of the alleged partnership and an accounting.

We express no view on whether the case should be transferred to the Superior Court, with a cross-departmental assignment of the Superior Court judge to hear and decide any claims (such as partition) that lie outside the Superior Court's jurisdiction, or should instead remain in the Land Court, with a cross-departmental assignment of the Land Court judge to hear and decide any claims that lie outside the Land Court's jurisdiction. In either event, however, we note that it would appear to be in the interest of judicial economy to merge and consolidate the defendants' subsequently filed Superior Court complaint with the present action. See note 12, supra.