VIRGINIA DIRANIAN, administratrix,[1] *vs.* MICHAEL DIRANIAN,
administrator.[2]

No. 00-P-508.

Suffolk. April 11, 2002. - August 19, 2002.

Present: DUFFLY, KANTROWITZ, & COHEN, JJ.

*Practice, Civil,* Findings by judge. *Real Property,* Ownership. *Partnership,*
Dissolution, Death of partner.

A Superior Court judge's finding that certain parcels of real estate were
purchased with funds of a partnership was not clearly erroneous [607-609];
consequently, in the absence of a written partnership agreement providing
for a different distribution of the property from that required pursuant to
G. L. c. 108A, §§ 29-43, in the event of dissolution, the property was
presumed to be partnership property, subject to the right of the estate of
the first partner to die to an accounting [609-610].

CIVIL ACTION commenced in the Superior Court Department on
June 19, 1997.

The case was heard by *Gordon L. Doerfer,* J.

*Frank P. Muzio* for the defendant.

*David B. Wilson* for the plaintiff.

KANTROWITZ, J. Two now-deceased brothers engaged in a
partnership for a real estate rental business. At the same time,
the brothers held title to certain parcels of real estate in Mas-
sachusetts and New Hampshire as joint tenants with rights of
survivorship. At issue is whether those parcels of real estate
constituted partnership assets that trumped the right of survivor-
ship or whether the brothers intended the partnership to
encompass only the management of the rental business and not
ownership of the real estate. The trial judge found that the
parcels of real estate were purchased with partnership funds

---

[1] Of the estate of Andrew Diranian.

[2] Of the estate of Harold Garabed Diranian.

and, therefore, were presumed to be partnership property, subject to the right of the estate of the first partner to die to an accounting. We affirm.

*Background.* For over thirty years, brothers Harold and Andrew Diranian were engaged in a for-profit real estate rental business under the name Har-And Realty Co. (Har-And).[3] They had no written partnership agreement, but held several bank accounts and filed partnership income tax returns under that name. The bank accounts were used for business-related expenses, such as real estate taxes and mortgages, and for the deposit of rental income, investment profits, accrued interest, and proceeds of sales of real estate. The Diranians also used these accounts for personal expenses such as payment of income taxes, the purchase of automobiles, and payment of Harold's homeowner's insurance and telephone bills; both brothers drew weekly compensation from the Har-And accounts. The partnership income tax returns[4] for Har-And listed January 1, 1960, as the date of the inception of Har-And and indicated that the brothers shared the profits equally.[5]

Andrew died intestate on January 13, 1995, survived by his wife and children. At the time of Andrew's death, Andrew and Harold owned outright six properties in Massachusetts and an undeveloped parcel of land in New Hampshire. The deeds show that Harold and Andrew held title to these properties as joint tenants with right of survivorship. Virginia Diranian, Andrew's daughter, is the administratrix of his estate. She requested from Harold information relating to her father's interest in the partner-

---

[3]In 1922, Massachusetts adopted the Uniform Partnership Act, which defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." G. L. c. 108A, § 6(1), as inserted by St. 1922, c. 486, § 1.

[4]Partnership income tax returns for Har-And were offered in evidence only for the years 1984 and 1994. These returns stated that: the principal business activity of Har-And was "real estate," the service of the partnership was "rentals," Harold and Andrew shared the profits equally, and January 1, 1960, was the inception date of the business.

[5]Carol Cotino, the Diranians' accountant, also testified that the Diranian brothers purchased the New Hampshire property as an investment, that the Diranians claimed all yearly profits reflected on the Har-And partnership returns as personal income on their own tax returns, and that, in the early years of the business, the mortgages of their properties were paid out of the Har-And accounts.

ship in order to settle Andrew's estate. Harold responded, stating his belief that Andrew's share was nonexistent as they held the property jointly with rights of survivorship and that all the jointly owned real estate was now solely his property as the surviving joint tenant. After Andrew's death, Harold continued to rent the real estate located in Massachusetts and sold the undeveloped land in New Hampshire. Harold died a bachelor on July 3, 1996, also intestate. Michael Diranian, Harold and Andrew's brother, is the administrator of Harold's estate.

On June 19, 1997, Virginia Diranian, as administratrix of Andrew's estate, filed the underlying lawsuit against Michael Diranian, as administrator of Harold's estate. Virginia alleged that Andrew and Harold were partners and that the seven properties at issue were assets of this partnership, and sought an accounting of Har-And property and profits since Andrew's death. Michael denied that the real estate belonged to the partnership, basing that assertion on the language in deeds to the brothers which stated that they took title to the properties as joint tenants. Michael argued in the alternative that even if the real estate were partnership property, the deeds expressed the intention of Harold and Andrew that ownership of the properties should vest in the surviving brother.

After trial, the judge found that Andrew and Harold used funds from their business to purchase the real estate they managed and concluded that the real estate parcels were partnership assets notwithstanding the deeds describing the Diranians as joint tenants. The judge ruled that Harold's estate must account to Andrew's representative for a one-half interest in the real estate[6] after liquidation and payment of debts, as well as interest or profits attributable to Harold's use of the partnership property after Andrew's death. Michael appealed.

*Presumption that the real estate was partnership property.* Michael first argues that the trial judge's finding of fact that the real estate in question was acquired with partnership property is erroneous, thus obviating the need to address the statutory presumption, G. L. c. 108A, § 8(2), that "[u]nless the contrary

---

[6]Also at issue was a partnership bank account containing $92,577.48. Michael has not appealed the order requiring him to provide an accounting for this asset.

intention appears, property acquired with partnership funds is partnership property."

In a civil case heard by a judge without a jury, we will accept the trial judge's findings of fact as true unless they are clearly erroneous. *Yankee Microwave, Inc.* v. *Petricca Communications Sys., Inc.*, 53 Mass. App. Ct. 497, 504 (2002). Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996) ("[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses"). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Yankee Microwave, Inc., supra*, quoting from *J.A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789, 792 (1986), quoting from *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

The trial judge's finding that the properties were purchased with partnership funds was not clearly erroneous. Evidence was presented at trial that the Diranian brothers listed themselves as fifty percent owners of the partnership's capital on their individual partnership tax returns. The accountant testified that the Diranians shared profits and losses equally and that she believed their business to encompass the ownership as well as the rental of residential real estate. The properties were each purchased after the commencement of the partnership. Additionally, there was evidence that the brothers historically treated their real estate as though it were partnership property, even where it was not titled in the partnership name. Evidence was presented that the brothers, on one occasion, prepared a deed listing both of them as grantors in anticipation of selling a piece of property. That property was in fact owned solely by Andrew, although it was rented out by Har-And. Andrew corrected the deed and executed one solely in his name. Post-sale, however, the transaction was reported on the partnership tax return for Har-And, and the proceeds were divided equally. Evidence was also presented that in 1994, when the Diranians received insurance proceeds from a fire that occurred at a beauty parlor they

owned (the specific form of ownership being unclear, however) and rented (by Har-And), the brothers deposited those funds into a partnership bank account, ultimately using a portion of these funds to develop the New Hampshire property.

While assets can be owned by a partner in his individual capacity, subject to the right of use by the partnership, see *Taber-Prang Art Co.* v. *Durant*, 189 Mass. 173, 174 (1905), the evidence here supports the trial judge's finding that the real estate in question was purchased with partnership funds and was considered partnership property. Based on the evidence before the judge at trial, his finding was not clearly erroneous.

As the judge determined that the real estate was purchased with partnership funds, these properties are presumed to be partnership assets. G. L. c. 108A, § 8(2).

*Disposition of the property.* Michael argues that, even if the properties are deemed to be partnership assets, it was the intent of the parties, as indicated by the deeds, that the property pass to the survivor, Harold in this case, by right of survivorship. As such, the real estate was not subject to an accounting to the nonsurvivor's administratrix, Virginia.

The death of a partner causes the dissolution of the partnership in the absence of an agreement otherwise. G. L. c. 108A, § 31(4). On dissolution, the partnership "continues until the winding up of partnership affairs is completed." G. L. c. 108A, § 30. "On the death of a partner his right in specific partnership property vests in the surviving partner . . . [who] has no right to possess the partnership property for any but a partnership purpose." G. L. c. 108A, § 25(2)(*d*).

When Andrew died, legal title to these properties vested in Harold, and he "was bound to account for [their] application to the payment of firm debts and to the settlement of the partnership accounts." *Cavazza* v. *Cavazza*, 317 Mass. 200, 203-204 (1944) (citations omitted). See G. L. c. 108A, § 42.

Partners may use a written partnership agreement to provide for different distributions from those required pursuant to the statutory provisions of G. L. c. 108A, §§ 29-43, in the event of

dissolution.[7] The Diranian brothers, unfortunately, had no written partnership agreement. The language on the deeds is insufficient, by itself, to compel the conclusion that the brothers had an intent to hold the properties contrary to the statutory provisions.[8] See *Fall River Whaling Co.* v. *Borden,* 10 Cush. 458, 461 (1852) ("land, whatever the aspect of the legal title, may nevertheless be proved in equity to be part of the joint stock of a copartnership, and as such, liable to all the equitable conditions of partnership property").

*Judgment affirmed.*

---

[7]See, e.g., *Jones* v. *Schellenberger,* 225 F.2d 784, 794 (7th Cir. 1955), cert. denied, 350 U.S. 989 (1956) (applying the Uniform Partnership Act, the Seventh Circuit Court of Appeals ruled that, when the partners had a written partnership agreement expressly stating their intention to own the business as joint tenants with right of survivorship, and that upon the death of either, "all right, title and interest" shall vest immediately in the surviving partner, title was properly vested in the surviving partner). See also *Webber* v. *Rosenberg,* 318 Mass. 768 (1945) (Property purchased with partnership funds was partnership property. However, the parties, having agreed to the dissolution of the partnership and its assets and debts, could also agree to the disposition of the property).

[8]While a court may reform a written instrument in equity in the instance of fraud, accident, or mistake in its execution, see Eno & Hovey, Real Estate Law § 4.58 (2001 Supp.), there are no facts to justify doing so here.