Nickerson, J.
This is an action for equitable relief arising from the irretrievable breakdown of the parties’ business relations. The case was tried to the Court sitting without juiy on July 9, 2004. Based on all the credible evidence the Court enters the following findings of fact.
FINDINGS OF FACT
The parties to this action are well established businessmen in the Orleans area. Walter Brown is an assessor for the Town of Chatham. James Trainor is a real estate broker and appraiser of considerable experience. John Hallisey is an attorney, a veteran of many years as a solo practitioner on the lower Cape.
In November 1990, Brown and Trainor became aware of a business opportunity, the sale of the leasehold interest in the premises at 29 Main Street in Orleans. For many years, the Mulholland family enjoyed a long-term lease on the land at 29 Main Street. The fee interest was owned by the Frank A. Besse Trust. The Mulhollands maintained a commercial building on the site containing retail shops and offices.
Brown and Trainor approached Hallisey, suggesting that they join forces to purchase the building and an assignment of the ground lease. The three entered into an agreement to do so. Hallisey drafted a five-page document entitled “Agreement,” which all three signed on November 13, 1990. By its terms, the Agreement called for Brown to contribute $52,250.00 towards the purchase price of $165,000.00, Trainor to pay $62,250.00 and Hallisey to pay $50,500.00. Despite the differences in their initial contributions, the Agreement declared that future profits and losses would be assessed one-third to each.[1] The Agreement provided that the three men would take title to the premises as “co-tenants.” Nowhere in the Agreement did the terms partners, partnership or joint venture appear.
The transaction closed December 12, 1990. The assignment of the Mulholland/Besse lease was not marked as an exhibit. There is a bill of sale from Mulholland to the three men denoted as exhibit 10 wherein the building was transferred to the three “as co-tenants, each as to an equal 1/3 individual interest.” While the Agreement recites the above-referenced original contributions of the three towards the purchase price, on December 12,1990, the three men also signed a promissory note in favor of the Cape Cod Five Cents Savings Bank whereby the bank loaned $132,000.00 to the men, jointly and severally (ex. 23). The record is bereft of further evidence explaining how the acquisition of the leasehold interest was financed.
The three gentlemen amended the Agreement in 1993 by way of a document, drafted by Hallisey, entitled “Amendment To Agreement of November 13, 1990" (ex. 27). The 1993 Amendment is of little sub *676 stantive interest as it deals with Trainor’s ability to receive real estate broker’s fees on transactions affecting 29 Main Street and with Hallisey’s receipt of legal fees on 29 Main Street business. The 1993 document is significant as it refers to the original Agreement as ”our Partnership Agreement" and speaks of legal work done “for the partnership.” In similar fashion Hallisey used the term partnership in a March 1993 letter to Brown when referring to 29 Main Street (ex. 28). Indeed the letter is captioned “Re: 29 Main Street Partnership.” Hallisey drafted a separate “Agreement as to Legal Fees,” to implement the 1993 Amendment, wherein he referred to “the partnership known as 29 Main Street Partnership, being the partnership formed by Brown, Hallisey and Trainor to own and manage the building at 29 Main Street” (ex. 29).
From December 1990 until recently, 29 Main Street has been owned and managed pursuant to the Agreement. On October 1, 2001, the parties purchased the fee interest in the premises from the Besse Trust for $100,000.00. The deed runs to Trainor, Brown and Hallisey without further qualification (ex. 24). The transaction was apparently financed by a loan of $148,000.00 from the Cape Cod Five Cents Savings Bank (ex. 25).
From the outset, the building has been a profit making endeavor. During the first decade of ownership, the triumvirate was at peace. At about the time of the purchase from the Besse Trust in 2001, Hallisey unilaterally fired the group’s bookkeeper and took control of the accounts single handedly. Brown and Trainor chafed a bit but took no responsive action. Two of the building’s long-term tenants are Guertin Brother’s Jewelers (the trade name of GBJ, Inc., whose principal is Dean Smith) and Off The Top Beauty Salon owned by Karen Simpson. Issues regarding both tenancies fueled the rift between Hallisey and his two cohorts but the real causa bellum was an offer to purchase the premises made by Tom Kennedy (ex. 12).
In 1999, Guertin’s lease expired. The triumvirate voted to increase the rent from $1,500.00 to $ 1,800.00 per month. No new lease was executed. Guertin paid at the old rate, creating an arrearage each month. During 2002 and early 2003, the septic system at the property was failing, requiring frequent pump outs. The Beauty Salon needed a closed system to accommodate hair dyes and such waste products. Brown and Trainor favored the installation of a new septic system while Hallisey wanted to either limp along with the old system or impose the cost of a new system on Simpson. The Town’s health agent was growing impatient.
In August 2003, Kennedy offered to buy the premises for $460,000.00. He required that there be new leases for Guertin and the Beauty Salon and that the septic system be brought up to code (ex. 12). Brown and Trainor negotiated a higher sale price of $485,000.00. They sought Hallisey’s approval but he nixed the deal. Brown and Trainor took it upon themselves to have an engineer draft plans for a new septic system. They had it installed by a contractor, paying for it from their own pockets. Hallisey refused to reimburse them.
From the summer of 2003 through the spring of 2004, correspondence was traded between the tenants, Hallisey and the Brown/Trainor team. Hallisey put Simpson on notice in a letter dated June 25, 2003 (ex. 19) that 29 Main Street “was a joint venture, not a partnership,” and thus any lease would require all three men’s signatures. On February 23, 2004, Hallisey wrote to Smith, the principal of Guertin, that the three owned 29 Main Street “as tenants in common, each equally as to a one-third interest. We are not a partnership, but hold 29 Main Street, Orleans pursuant to a joint venture.” Hallisey went on to inform Smith that any lease would require all three signatures.
Brown and Trainor were not cowed by Hallisey. They took the view that paragraph 5 of the agreement permitted a majority of the three to bind the group “in regard to all matters affecting the premises” (ex. 1). So armed, they entered into a lease with Simpson dated February 4, 2004, a lease with Guertin taking affect March 1, 2004 (ex. 13) and a purchase and sale agreement with Kennedy dated March 10, 2004.
Hallisey was protesting these actions by Brown and Trainor to all involved. Hallisey, believing that the new leases somehow constituted a transfer of Browm and Trainor’s interest in the venture, sought to purchase their respective interests pursuant to paragraph 9 of the Agreement. His proposed purchase price was so low as to make his offer disingenuous, leading this jurist to conclude that Hallisey was merely attempting to recast the business relationship as something other than a partnership. Brown and Trainor refused his offer and filed suit March 31, 2004.
When the parties appeared before this jurist with cross motions for preliminary injunctions the Court deferred and issued an order for a prompt trial pursuant to Rule 65(b)(2).
APPLICATION OF THE FACTS TO THE LAW
On November 13, 1990, Brown, Trainor and Hallisey entered into a partnership to owm and manage the real estate at 29 Main Street. A partnership is “an association of two or more persons to carry on as co-owners of a business for profit.” G.L.c. 108A, §6(1). Massachusetts has adhered to this definition for over eighty years, having adopted the Uniform Partnership Act in 1922. The case law expresses the same principle, i.e. a partnership is a voluntary contract of association for a profit motive. Boyer v. Bowles, 310 Mass. 134, 138 (1941). Hallisey’s claim that the men formed a joint venture is not persuasive. A joint venture revolves around a single transaction or investment, Shain Investment Co., Inc. v. Cohen, 15 Mass.App.Ct. 4, 7 (1982), whereas a partnership is of greater *677 breadth and duration.[2] The three men came together to pool their resources and talents to make a profit from a business opportunity. Their Agreement, while devoid of the word “partnership,” constitutes a partnership agreement. Compare with Shinberg v. Garfinkle, 361 Mass. 109, 114 (1972). Before 2003, Hallisey repeatedly characterized their union as a partnership and never as something less. His intention, as well as that of Brown and Trainor, was to create a partnership.
While the statute and case law provide a general frame work for the running of a partnership, the written agreement of the parties is a contract which can vary the effect of the law in specific circumstances. Diranian v. Diranian, 55 Mass.App.Ct. 605, 609 (2002). The Agreement of November 13, 1990 sets forth a comprehensive scheme for owning and managing the real estate at 29 Main Street. Paragraph 4 provides that the three men “should take title ... as co-tenants.” Nonetheless, paragraph 4 recognizes that each man will contribute a different amount towards the purchase price for the leasehold interest. Paragraph 4 prescribes equal shares in the partnership to each of the three men. Paragraph 4 describes the means by which the group will hold title but does not preclude the imposition of a tenancy by partnership. Diranian, 55 Mass.App.Ct. at 610.
Paragraph 5 of the agreement gets to the heart of how the three men view their ownership of 29 Main Street. They established that “all matters affecting the premises” can be decided by a vote of two of the three men. The only exception to this rule in the Agreement is that all three must agree before one of the partners can occupy space in the building at 29 Main Street. No exception to majority rule is set forth concerning mortgaging the premises or the outright sale of 29 Main Street. Paragraph 5 expressly states that the minority member will be bound by the majority’s vote. No doubt the minority member is protected by the majority’s obligation to act as fiduciaries to all. Starr v. Fordham, 420 Mass. 178, 183 (1995). In short, paragraph 5 makes it clear that each partner is surrendering any vestige of individual ownership in the property, thus creating a tenancy in partnership.
Paragraph 9 of the agreement is not in conflict with paragraph 5. Paragraph 9 creates a right of first refusal in each partner “to purchase the interest of the other(s).” The interest referred to is the partner’s ownership interest in the partnership. Paragraph 9 does not reference any partner’s residual ownership interest in the property as a tenant in common. Ambiguous language is to be construed against its drafter, Garnick & Scudder, P.C. v Dolinsky, 45 Mass.App.Ct. 925, 926 (1998), a principle of even greater significance in the case at hand where Hallisey is an attorney and Brown and Trainor are not. Beatty v. NP Corp., 31 Mass.App.Ct. 606, 612 (1991). The obvious purpose of paragraph 9 is to govern the situation where a partner wishes to sell his share and the remaining partners wish to carry on the business.
The remaining evidence further bolsters the conclusion that the Agreement creates a tenancy in partnership as to the real estate at 29 Main Street. The Agreement preceded the acquisition of the leasehold interest by a month and the acquisition of the fee interest by over ten years. The partnership operated through a single checking account. All rents and expenses were funneled through the partnership’s accountant. There are instances where partners continue to hold property as tenants in common subject to partnership use, e.g. Taber-Prang Art Co. v. Durant, 189 Mass. 173, 174 (1905), but the facts suggest otherwise here. Of great significance is Hallisey’s admission in exhibit 29 that the venture is “the partnership known as the 29 Main Street Partnership, being the partnership formed by Brown, Hallisey and Trainor to own and manage the building at 29 Main Street.” This language clearly conveys Hallisey’s intention that the men established a tenancy in partnership over the real estate.[3]
The case of Diranian v. Diranian, 55 Mass.App.Ct. 605 (2002), is instructive in this area. In Diranian, the court applied G.L.c. 108A, §8(2), the presumption that property acquired with partnership funds is partnership properly. In Diranian the trial court was provided with significant direct evidence as to the financing of the purchase of properties that the partners took title to as joint tenants with a right of survivorship. In the present case this jurist did not receive such detailed testimony, but the exhibits at hand are important. When the leasehold interest was purchased, the men secured bank financing of $132,000 on a fifteen-year note. (ex. 23). When the fee interest was purchased the bank loaned $148,000 on a fifteen-year note (ex. 25). The rents from the property were sufficient to carry the notes. There is no evidence to suggest the venture had a negative cash flow. In 2003, when Brown and Trainor reached into their pockets to pay for the septic system, Hallisey refused to reimburse them as a matter of principle, not because of a lack of funds. In our case, the property was purchased with partnership funds.
Paragraph 5 of the agreement gives greater power to the majority of the 29 Main Street partners than the corresponding statutory provision, G.L.c. 108A, §18. Section 18(h) permits the majority partners to deal with partnership property in the normal course of business. The normal course of business does not include the outright sale of the property, however. See Wagley v. Danforth, 46 Mass.App.Ct. 15, 21 (1998). Section 18 recognizes that partners can vary the rule of Section 18 by agreement. Paragraph 5 is such a variance for it grants to the majority the right to act “in regard to all matters affecting the premises.”
Brown and Trainor contend that paragraph 5 empowered them to enter into new leases with the beauty *678 salon and the jewelry store in February of 2004. Moreover, they take the position that they had the power to enter into a purchase and sale agreement with Kennedy in March of this year. To the extent that the partnership was a viable entity in 2004, the expansive grant of authority under paragraph 5 enabled Brown and Trainor to do as they did. Hallisey’s protestations that the property is owned as tenants in common miss the mark.
The entire course of Hallisey’s conduct during 2002 and 2003 is significant for it amounts to a repudiation of the partnership. By 2002, Hallisey had taken the hostile step of firing the bookkeeper and denying Brown and Trainor access to the partnership’s checkbook. In June 2003, he put Simpson on notice that the men were not partners and that any further lease would require their three signatures (ex. 19). .Late in 2003, Hallisey refused to reimburse Brown and Trainor for the septic system, a legitimate partnership expense.[4] Hallisey breached the agreement, cast aside the statutory obligations of a partner and renounced the partnership to outsiders.
Brown and Trainor now seek the dissolution of the partnership. Hallisey’s conduct amounted to an expression of his will that the partnership was dissolved. See Lavoine v. Casey, 251 Mass. 124, 127 (1925). The agreement contains no terms governing the dissolution of the partnership. The partnership was not for a fixed term, nor was its purpose exhausted. Within the terms of G.L.c. 108A, §31, Hallisey’s conduct caused the dissolution. This court has broad powers to act in equity to determine the date of dissolution. Fisher v. Fisher, 349 Mass. 675, 678 (1965). The dissolution occurred in advance of the actions of Brown and Trainor in granting new leases and executing a purchase and sale agreement.[5]
Dissolution is the first step in the extinguishment of a partnership. Webber v. Rosenberg, 318 Mass. 768, 769 (1945). With dissolution the partnership enters its windup phase, leading to the liquidation of the partnership assets. The act or event of dissolution has consequences, it changes the relationship of the partners. G.L.c. 108A, §29. In the wake of dissolution Brown and Trainor could not bind the partnership to the purported leases or the proposed sale of 29 Main Street. Generally speaking, the business of the partnership post-dissolution is to wind up its affairs promptly and fairly. The partners are directed to do so in accordance with the Uniform Partnership Act.[6], [7]
ORDER
For the above stated reasons, it is ORDERED that judgment enter DECLARING that:
a)By their Agreement dated November 13, 1990, Walter P. Brown, James F. Trainor and John D. Hallisey entered into a partnership to own and manage real estate at 29 Main Street, Orleans, Massachusetts;
b) The said real estate, further described in a deed recorded in book 14292 page 163 at the Barnstable Registiy, is held by the individuals aforesaid as tenants in partnership; and
c) Said partnership was dissolved on or before December 31, 2003.
It is further ORDERED that judgment enter in the form of a permanent injunction directing the parties to wind up the business of said partnership in accordance with the General Laws Chapter 108A. No costs or fees are awarded.

While there was no direct evidence on point, the Court infers the difference in initial contributions reflected Hallisey’s in-kind contribution of legal services and Trainor’s receipt of a broker’s commission from the seller.

Hallisey’s adherence to the joint venture theory is curious for in the law a joint venture is often, but not always, governed by the principles of partnership law. Eastern Electrical Co. v. Taylor Woodrow Blitman Construction Corp., 11 Mass.App.Ct 192, 197 (1981).

While a tenancy in common can be partitioned only by the Probate Court or Land Court, a tenancy in partnership comes within the jurisdiction of the Superior Court. Webber v. Rosenberg, 318 Mass. 768, 769 (1945).

Clearly Brown and Trainor are entitled to be reimbursed for the septic system. G.L.c. 108A, § 18(b) provides that the partnership is obligated to so reimburse a partner for expenses of the partnership he has paid. The same is trae for necessary expenses paid during the wind-up phase of a partnership. G.L.c. 108A, §35(l)(a). As a practical matter, the property cannot be sold without an up to date septic system.

Simpson, Guertin and Kennedy are not parties to this action. While it appears they all were on notice not to proceed in transactions with only Brown and Trainor, this court hesitates to adjudicate any claims they may have in their absence.

Should they reach an impasse, the court is empowered to wind up the partnership. G.L.c. 108A, §37.

Hallisey’s claims of abuse of process, unfair business practices and waste by Brown and Trainor were not established at trial.