SHAIN INVESTMENT COMPANY, INC. & others[1] vs.
HERMAN B. COHEN.

Suffolk.  October 28, 1982. — December 10, 1982.

Present: BROWN, GREANEY, & DREBEN, JJ.

*Partnership,* What constitutes.  *Joint Enterprise.  Evidence,* Extrinsic
affecting writing.  *Contract,* Construction of contract.  *Fiduciary.*

No partnership was created by an agreement between a defendant and
plaintiffs whereby the defendant was to share with the plaintiffs rights
and obligations created under an earlier agreement between the plain-
tiffs and others.  [7]
Discussion of joint business ventures.  [7-10]
An agreement between plaintiffs and a defendant, whereby the defendant
had an express right to share in the profits of an investment, an interest
in the investment's present and future assets, and, under this court's in-
terpretation of the agreement, an interest in the way the investment
was managed, was sufficiently similar to a joint venture to create a
fiduciary relationship between the defendant and the plaintiffs.
[10-11]
In an action on a contract under which the defendant had a responsibility
to share certain business losses, the defense that the losses were caused
by actions of the plaintiffs in breach of their fiduciary duty to the de-
fendant was properly raised by the defendant in his answer and did
not have to be asserted as a separate counterclaim.  [11-12]
In an action on a written contract whereby the defendant was to share
certain investment profits and losses with the plaintiffs, evidence of an
oral agreement that the first $50,000 received was to be paid solely to
the defendant was properly excluded under the parol evidence rule.
[12-13]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 10, 1979.

The case was heard by *Morse,* J., on motion for summary
judgment.

[1] Jack Shain and Louis I. Shain.

*Tina M. Traficanti* for the defendant.

*W. Arthur Garrity, III,* for the plaintiffs.

GREANEY, J. The defendant, Cohen, appeals from a judgment entered in the Superior Court pursuant to Mass.R. Civ.P. 56(a), 365 Mass. 824 (1974), which found him liable for breach of contract and assessed damages in the amount of $124,952.56.

By an agreement dated July 25, 1969, the plaintiffs Shain Investment Company, Inc. (SI), and its principals, Jack and Louis I. Shain (Shains), acquired a one-tenth interest in (i) Investment Funds, Inc. (IFI), (ii) the net earnings of Roberts & Co. (Roberts) (owned by IFI's principal shareholder, Harold J. Moffie), and (iii) certain stock of Medical Services Corp. of America (Medical Services) (also owned by Moffie). IFI, Roberts and Medical Services appear to have been concerned (among other things) with the design, financing, construction and management of nursing homes, apartments, and condominiums and with the provision of services to those projects. Additionally, under the agreement SI acquired an "option" to purchase ten percent of the stock of Congress Capital Corporation (Congress) from Moffie, if Moffie acquired all of Congress's stock. For its part, SI agreed to obtain unsecured lines of credit for IFI so it could obtain working capital and to provide any needed corporate guarantees and endorsements. The Shains agreed to provide any individual guarantees or endorsements required by lenders. The Shains each became compensated vice-presidents of IFI, and SI was permitted to designate a member of IFI's board of directors. Jack Shain was the designee.

By written agreement dated August 1, 1969, SI and the Shains agreed to transfer to Cohen, in consideration of $50,000, one third of their interest in IFI and in the other rights acquired under the July 25 agreement. Cohen had been the plaintiffs' accountant for more than twenty years, was knowledgeable in the investment field, and had been involved in previous "deals" with the Shains. With certain exceptions not here material, the August 1 agreement provided that Cohen would share to the extent of one third in

"(a) all income, profits, benefits, rights and privileges (including without limitation, the rights to one-third [⅓] of the earnings of Roberts & Co., the right to participate in [IFI's] future developments . . . and the right to acquire any interest in Congress . . .) and (b) all payments, expenditures, losses, duties and obligations, under . . . the [July 25] Agreement." Cohen asserts that an oral understanding, never reduced to writing, was reached prior to or contemporaneously with the August 1 agreement by which he would receive the first $50,000 disbursed from IFI in order to recoup his investment. Cohen never dealt directly with IFI, Roberts, Medical Services or Moffie, nor did the agreement purport to give him the right to do so.

IFI went bankrupt at a date undisclosed in the record but apparently in late 1970. While the parties' investment was active, they had shared certain expenses and Cohen had received about $35,000 in proceeds. The plaintiffs claim to have incurred losses and expenses of $374,856.78 which Cohen has refused to share.

SI and the Shains then brought this action against Cohen to enforce his obligation to pay one third of the losses and expenses. Cohen admitted the existence of the August 1 agreement but asserted that it created, by way of a partnership or joint venture, a fiduciary relationship, which the plaintiffs had violated by their mismanagement of the investment. He claimed to have been excused from sharing in any losses because such losses were caused by violations of duties owed him by the plaintiffs. The plaintiffs moved for summary judgment and both sides submitted materials in support of and in opposition to the motion. The foregoing facts are taken from those materials and appear undisputed. The motion was referred to a master who, after hearing, recommended in a brief memorandum that judgment enter for the plaintiffs on the motion. A judge of the Superior Court accepted the master's recommendation, ruling in essence (in accord with the analysis in the master's memorandum) that no genuine issue of material fact was presented as to the existence of either a partnership or joint venture and

that Cohen's attempt to engraft an oral term on the August 1 agreement was barred by the parol evidence rule.

1. As among the parties, the existence of a partnership or joint venture depends upon their intent to associate as such. *Cardullo* v. *Landau*, 329 Mass. 5, 8 (1952). We are of the opinion that no general partnership was created by the August 1, 1969, agreement with respect to Cohen's relationship to SI and the Shains. Although its absence is not decisive, the word "partnership" appears nowhere in the agreement. Compare *Shinberg* v. *Garfinkle*, 361 Mass. 109, 114 (1972). The agreement deals with Cohen's purchase of stock and the parties' arrangement to share the rights and obligations created under the July 25 agreement, but it does not provide a vehicle for joint control of a business. As in *Shinberg*, "[w]hatever relationship there was between [the defendant] and [the plaintiffs] was for a single, limited investment by the former, rather than for the joint conduct of a continuing business." *Ibid.* Cohen and the plaintiffs were not associated "to carry on as co-owners a business for profit." See G. L. c. 108A, § 6(1).

2. The relationship does, however, reflect certain attributes of a joint venture, a form of business relationship which has not been comprehensively defined by our courts. See *Cardullo* v. *Landau, supra*; *Eastern Elec. Co.* v. *Taylor Woodrow Blitman Constr. Corp.*, 11 Mass. App. Ct. 192, 196-197 (1981). "Speaking generally a joint adventure is a partnership of a sort or, at least, it has many of its characteristics. It differs, however, from a partnership in that it is ordinarily, although not necessarily, limited to a single enterprise, whereas a partnership is usually formed for the transaction of a general business." *Cardullo* v. *Landau, supra* at 8. See *Mendelsohn* v. *Leather Mfg. Corp.*, 326 Mass. 226, 233 (1950). See also Taubman, What Constitutes a Joint Venture, 41 Cornell L.Q. 640, 641 (1956); Annot., 48 A.L.R. 1055, 1060 (1927); Annot., 138 A.L.R. 968, 974-975 (1942). It has been suggested that the primary difference is "that in a partnership each member is co-owner of a *business*, — a fact that does not exist in a joint adven-

ture" (emphasis in original). Note, A Partnership and a Joint Adventure Distinguished, 33 Harv. L. Rev. 852, 853 (1920). The agreement among SI, the Shains and Cohen comprehended a limited arrangement in which the parties pooled capital and risk to obtain mutual advantage from an investment opportunity.

In *Shinberg* v. *Garfinkle, supra,* the plaintiff, Mr. Shinberg, had advanced $25,000 to the defendant Garfinkle to share in the defendant's investment with two others in a nursing home. The defendant contributed only services to the enterprise. The plaintiff had no right to control or manage the investment. The court found that the arrangement between the parties "in some respects resemble[d] a joint venture." *Id.* at 114. The court stopped short, however, of expressly holding it to be one, apparently because the parties' agreement did not manifest the requisite intent to associate as joint venturers in view of the express use of those words to describe the relationship between the defendant and the other two investors. In the present case there is no such internal inconsistency in the August 1 agreement as would allow us to read out of the agreement an intent to associate as joint venturers.

In *Air Technology Corp.* v. *General Elec. Co.,* 347 Mass. 613 (1964), the parties became involved in a "team" proposal for a military contract for complex scientific equipment. The court concluded that the agreement was not a "joint venture within that indefinite term's ordinary usage," *id.* at 624, because "[t]here was to be no such sharing in the profits of the prime contract, no such joint interest in particular assets, and no such joint control of performance as would ordinarily exist in a joint venture in the usual sense." *Id.* at 625. In the present case, however, Cohen had an express right to share in profits, an interest in the investment's present and future assets, and, as will be discussed in more detail later in this opinion, an interest in the way the investment was managed.

It may not be possible to identify criteria for the existence of a joint venture with any definiteness. Nevertheless, the

following pragmatic check list suggests considerations which, if present or absent, may bear upon the recognition of one: (1) an agreement by the parties manifesting their intention to associate for joint profit not amounting to a partnership or a corporation; (2) a contribution of money, property, effort, knowledge, skill, or other assets to a common undertaking; (3) a joint property interest in all or parts of the subject matter of the venture; (4) a right to participate in the control or management of the enterprise; (5) an expectation of profit; (6) a right to share in profits; (7) an express or implied duty to share in losses; and (8) a limitation to a single undertaking (or possibly a small number of enterprises). See 2 Williston, Contracts § 318, at 555-556, § 318A, at 563-565, 574, 579 (3d ed. 1959); Bromberg, Crane & Bromberg, Partnership § 35 (1968); Reuschlein & Gregory, Agency and Partnership § 266 (1979). It is obvious that the agreement among SI, the Shains and Cohen involved the first, second, third, fifth, sixth and eighth considerations. The seventh consideration — the sharing of losses — is an important one, see 2 Williston, *supra* § 318A, at 579, and cases cited in n.16; cf. *Cardullo* v. *Landau,* 329 Mass. at 9, and is a factor present here since Cohen was obliged to share in one third of all losses and expenses. Moreover, as previously suggested, the considerations in the *Shinberg* and *Air Technology* cases which led to the decisions that no joint venture existed there are not involved in this case.

Substantial authority underscores the importance of the fourth consideration that "[a] right of mutual control or management of the enterprise" is an essential element of joint venture. 2 Williston, *supra* § 318A, at 563-564, 570, 579. See *Air Technology Corp.* v. *General Elec. Co., supra* at 625; *Joe Balestrieri & Co.* v. *Commissioner,* 177 F.2d 867, 871 (9th Cir. 1949); *Hathaway* v. *Porter Royalty Pool, Inc.,* 296 Mich. 90, 103 (1941); *Sample* v. *Romine,* 193 Miss. 706, 726 (1942); *Ford* v. *McCue,* 163 Ohio St. 498, 502-503 (1955). Compare *Meinhard* v. *Salmon,* 249 N.Y. 458, 462 (1928) (Cardozo, C.J., where the relationship was deemed a joint venture although one party had sole right to

"manage, lease, underlet and operate" the subject of the venture). The August 1 agreement conferred no legal right upon Cohen directly to manage or control his part of the investment. Rather control was vested in SI and the Shains by reason of their ability to exercise rights and perform obligations created in the July 25 agreement and through the Shains' roles as officers or a director of IFI. The Shains could not delegate to Cohen their personal rights and duties as officers and a director of IFI. See *Odman* v. *Oleson*, 319 Mass. 24, 25 (1946); 15 Williston, *supra* § 1736, at 33-34 (3d ed. 1972); 2 Fletcher, Cyclopedia of the Law of Private Corporations § 495 (rev. perm. ed. 1982). Nonetheless the language in the August 1 agreement which entitled Cohen to share in "all . . . benefits, rights and privileges . . . and . . . duties and obligations" possessed by SI and the Shains should be construed so as to burden the latter with a duty to consult and advise Cohen on their decisions. This duty especially applied with respect to the actions taken by the Shains to support IFI's capitalization through incurring obligations or making loans in which Cohen was contractually bound to share any ensuing losses. While the duty so imposed falls short of an obligation to allow Cohen to have "joint control" over the investment in the sense that that term is used in the *Air Technology* case and by test writers like Professor Williston, the record indicates that Cohen was more than a spectator in the enterprise and that he might reasonably expect to have a role in the decision-making process as to matters affecting his personal interest in the investment. Cohen's deposition reveals that this expectation was implicitly recognized and at least partially realized at several meetings with the Shains during which decisions affecting the investment were made or discussed. Moreover, the August 1 agreement gave Cohen the right to share in the earnings of Roberts, the right to a percentage share in "any present or future project, development, contract or undertaking of IFI and/or Moffie," and the right to acquire part of the stock of Congress, should the Shains' "option" become exercisable. In all these respects, the August 1 agreement

conferred rights which went well beyond what would be expected had Cohen merely made a passive investment like the purchase of a stock or bond. In an area where the cases are of little help (since they are generally restricted to their own particular facts), we conclude that even if the arrangements at issue fall short of a textbook joint venture, they are sufficiently similar to such an endeavor to create a fiduciary relationship between Cohen and the plaintiffs similar to that which exists among parties to a joint venture.

3. Cohen asserts that the plaintiffs violated duties arising out of that relationship through several enumerated acts and omissions.[2] Cohen correctly contends that participants in a joint venture are subject to the same fiduciary duties imposed upon members of a partnership. See *DeCotis* v. *D'Antona*, 350 Mass. 165, 168 (1966); Bromberg, *supra* § 68, at 389; 2 Williston, *supra* § 318C, at 623-624; Sugarman, Partnership § 9, at 21-22 (4th ed. 1966). We have concluded that those same duties should apply in this case.

Although Cohen did not dispute his responsibility under the August 1 agreement to share in losses, he asserts that any such losses were caused by the plaintiffs' alleged fiduciary

---

[2] Cohen, in his deposition, claims that the plaintiffs violated their duties by (1) failing to acquire the stock of Congress pursuant to the "option" clause in the July 25 agreement; (2) failing to acquire the stock of Medical Services as contemplated in the July 25 agreement; (3) executing a document on February 20, 1970, which rendered Moffie's contribution to IFI's capital and a stock redemption agreement retroactive for purposes of the July 25 agreement, thereby making acquisition of Medical Services' stock impossible; (4) not requiring that a May 6, 1970, agreement with one Saul Moffie to purchase IFI's note to the Shains be made unconditional; (5) entering an agreement on May 6, 1970, providing for a stock redemption by IFI, rather than rescinding the July 25 agreement, thereby enabling the trustee in bankruptcy to reach payments made to the parties by IFI which might otherwise have been beyond his reach; (6) not attempting to enforce a provision in the May 6 redemption agreement to the effect that Roberts would provide security for IFI's note to the Shains; and (7) Louis I. Shain's execution of an instrument on October 16, 1969, lending $100,000 from SI to IFI, despite circumstances which should have raised suspicion about IFI's financial stability. Additionally, in an affidavit, Cohen asserts that the Shains violated their duty by "[a]ccepting membership on the [b]oard of [d]irectors of IFI, unknown to me, in conflict with their obligations to me."

violations. Since the judge erroneously decided that a fiduciary relationship did not exist, there must be further proceedings to determine whether the activities Cohen questions, see note 2, *supra,* violated any such duties[3] and, if so, whether such violations caused the losses. Cohen may try these issues because he has raised them as defenses in his answer. Contrary to the plaintiffs' argument, he has not forfeited his right by failing to formulate the issues as independent counterclaims. See Mass.R.Civ.P. 8(c) & (f), 365 Mass. 750, 751 (1974).

4. Cohen contends that an oral understanding was reached, either prior to or contemporaneous with the August 1 agreement, to pay the first $50,000 received from IFI solely to him. This provision, if proved, would directly contradict the agreement which, with certain exceptions, provides for Cohen to receive a one-third share from the first dollar.

Whether the alleged oral agreement was made before or at the same time as the writing, under the parol evidence rule the writing will control if it is an integrated agreement. Restatement (Second) of Contracts §§ 215, 218 (1981). "[T]he issue of the extent of integration of understandings in a formal agreement is an issue of fact for the decision of the . . . judge, entirely preliminary to any application of the parol evidence rule." *Wang Labs., Inc.* v. *Docktor Pet Centers, Inc.,* 12 Mass. App. Ct. 213, 219 (1981). The judge's adoption of the master's recommendation reflects a determination that the August 1 writing is an integrated expression of the parties' agreement. Our review of the record

---

[3] For Cohen to succeed, the evidence must show more than mere bad judgment on the part of the plaintiffs. As was said in the analogous context of partnerships: "There is no general principle of partnership which renders one partner liable to his copartners for his honest mistakes. So far as losses result to a firm from errors of judgment of one partner not amounting to fraud, bad faith or reckless disregard of his obligations, they must be borne by the partnership. Each partner owes to the firm the duty of faithful service according to the best of his ability. But, in the absence of special agreement, no partner guarantees his own capacity." *Hurter* v. *Larrabee,* 224 Mass. 218, 220-221 (1916). See also Bromberg, *supra* § 68, at 395-396.

indicates that no other determination could have been made as matter of law. The written agreement was precise on the share Cohen was to receive. The agreement is complete and consistent within itself and cannot be reconciled with the alleged oral agreement. "Where the writing shows on its face that it is the entire agreement of the parties and 'comprises all that is necessary to constitute a contract, it is presumed that they have placed the terms of their bargain in this form to prevent misunderstanding and dispute, intending it to be a complete and final statement of the whole transaction.'" *Bendetson* v. *Coolidge*, 7 Mass. App. Ct. 798, 802-803 (1979) (quoting *Glackin* v. *Bennett*, 226 Mass. 316, 319-320 [1917]). See also *Charles A. Wright, Inc.* v. *F.D. Rich Co.*, 354 F.2d 710, 714-715 (1st Cir.), cert. denied, 384 U.S. 960 (1966); Hughes, Evidence § 422, at 546-547 (1961). Cohen does not dispute the agreement's validity as a whole. There was no effort to show any mistake as to the meaning of the words used or to show that the parties misapprehended the contract. See *Gifford* v. *Gifford*, 354 Mass. 247, 248-249 (1968). In the circumstances of the transaction shown by the record, see Restatement (Second) of Contracts, *supra* § 212(1) & comment b; *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 755 (1973), the judge properly concluded that evidence of the oral agreement was barred by the parol evidence rule. See *Thomas* v. *Christensen*, 12 Mass. App. Ct. 169, 175 (1981).

The judgment is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*