Hershfang, J.
In this petition to set aside the Trial Judge’s disallowance of the Draft Report of the two third-party defendants, Anderson and Marino, (Appellants), they acknowledgedly stand on a narrow platform. Their task, as their counsel conceded in oral argument, is to establish that the Trial Judge was required to find for them as a matter of law. Or, put differently, that the Trial Judge had no adequate basis in the evidence to support his determination that Appellants were each responsible for one-third of the cost of the lawyers’ fees determined to be due to the lawfirms of LeComte, Emmanuel, Tick and Doyle and Tasca and Rotelli in the original action from which this third-party action or crossclaim arose. For the reasons hereafter set forth, Appellants’ petition is denied.
The short answer to Appellants’ contention derives from the requirements and standards under Dist./Mun. Cts. R. Civ. P., Rule 64 which authorizes aTrial Judge to disallow a Draft Report if that draft fails adequately to reflect the relevant testimony and other evidence available to the Trial Judge. Jencyowski v. Hambro, 326 Mass. 793 (1951); O’Flanagan v. Smith, 317 Mass. 770 (1945). See, generally, NOLAN, 9A MASS. PRACTICE SERIES at §958. The Trial Judge had made clear and explicit that one of the bases of his disallowance of the Draft Report was because Appellants had failed adequately in their Draft Report to reflect the evidence completely and correctly. See Certificate of Disallowance of Appellants’ Draft Report. The petitioners here undertook to obtain the tape recording of the trial proceeding, to have it transcribed and, apparentlywithoutcommentorobjection, to presentthetranscription in connection with this appeal. (Appellants’ submission of that “transcript” will hereafter be referred to by S. followed by a page number). While Appellants reflected notable creativity and conscientiousness in filling out what ordinarily is a narrow record in these Appellate Division matters, Appellants also thereby made clear that many aspects of the evidence favorable to the Trial Judge’s conclusions are indeed ignored in the Draft Report. See, e.g., S. 75-79,94 to 97 and 104 to 106 containing, inter *30 alia, testimony that Appellants were at all the meetings with the attorneys, and that all were to share in the profits of the venture. Thus, petitioners have clearly failed to meet an unambiguous requirement imposed on them under Dist/Mun. Cts. R. Civ. P., Rule 64. The disallowance of their Draft Report is thus warranted. Jencyowski, O’Flanagan, op. cit.
Similarly, while Appellants now contend (See Appellants’ Opposition Memorandum, p.3) that they preserved the issue of law when they unsuccessfully moved for a required finding on their behalf at the close of Bifano’s testimony, that claim is nowhere stated nor otherwise preserved in their draft report.
The longer answer to Appellants’ claim reaches the same result. Appellate Division procedures have recently come under attack as being anachronistic. See, eg., Brown v. Quinn, 27 Mass. App. Ct. 288, 292 (1989). A draft change in Rule 64 to govern Appellate Division proceedings that is currently under consideration allows an appellant to do what appellants did here to create a record from the transcript of the tape recording. Since that proposed rule change has not been and may never be adopted, I am constrained not to make any judgment based on it
However, even were the rule otherwise the result would have been the same. As noted, Appellants’ sole contention is that no fair reading of the evidence could warrant thedeterminationthateachbecamecommittedto Bifano, (theAppellee) to contribute one-third toward the cost of the lawyers’ fees. While the evidence is not overwhelming that Anderson and Marino were bound to do so, it is adequate.
In the high expectation of success in their project that all three participants shared it is understandable that three people inexperienced in “doing their own deal” never articulated in detail and certainly never committed to writing exactly what share of the costs any one of them would bear if their common expectation was not met. Under the circumstances, as here, where costs were incurred, the judge was free and required to determine whether and what understanding existed among them. Among the factors he had available to consider were these: Appellants had been clients of and referred Bifano to the lawyers here (S. 29,30). Bifano and Appellants had a verbal agreement (S.60), nothing in writing (S. 74). The three were always at meetings with the lawyers (S.66). They were partners (S. 60,66) and, according to Bifano eventually were to share one-third each (S. 67). Although only Bifano is named as the buyer in the proposed purchase agreement, it allowed for title to be taken byanominee (S. 70). Defendant Anderson’s own testimony makes clear that he and Marino expected to be paid for more than their management services, (S. 94) and that “if things were broke right on the Gorham Silver deal, we [Ernie Marino and I] were going to get a minority percentage of that project in (sic), besides our standard ten percent construction management fee.” (S. 97). Anderson further testified that “Ernie and I were going to get approximately 25 percent of the deal." (S. 97). Marino’s testimony was to the same effect. (S. 106). Moreover, Appellants, who appear not to dispute that the attorneys were entitled to their claimed fees, clearly agreed to have payment come from anticipated mortgage loan proceeds. SeeDraftReportpages7,8. See, too, S. 75. As noted, not only was there no project from which profits might arise, costs remained for the legal services that were the subject of this lawsuit. Contrary to Appellants’ bald assertion, there was a sound basis for the Trial Judge’s finding as credible Bifano’s claim. Since each Appellant could have been found entitled to one-third of the profits of the proposed deal (S. 79), each could have and was found responsible to bear one-third of the costs.
In short, the criteria for establishing a joint venture impliedly found to have existed here were satisfied in this case. See Shane Investment Co., Inc. v. Cohen, 15 Mass. App. Ct. 4, 7 (1982). While Anderson and Marino apparently had no ultimate control of events, the evidence is clear that Bifano did not make the decision to terminate the deal independent of Anderson and Marino, but only after discussing the matters with them, he says for several days (S. 54,83). Moreover, as noted earlier, Anderson and Marino were present at virtually every meeting with the attorneys and, significantly, *31 were responsible for Bifano’s selecting and dealing with the attorneys who filed the original suit Under all the circumstances, the Trial Judge had adequate basis for determining that Anderson and Marino did in fact participate in the management and control of the venture jointly with Bifano to have become jointly responsible with him for the costs involved in these claims. Shane, Id.
Tull v. Mister Donut Development Corp., 7 Mass. App. Ct. 626 (1979) on which petitioners rely is very different. The parties there clearly contemplated further negotiations before working out the final terms of the agreement before theycouldbe bound, 7 Mass. App. Ct. at 630. Here, however, when Bifano discussed paying the attorneys’ bills with Anderson and Marino, the three had already formed a corporation to continue their search for investment property. Bifano testified, and the judge could have determined, that Anderson and Marino suggested that the payment be made by all three but from the funding the project was expecting to receive from the bank. It was only after no funds materialized that Anderson and Marino disclaimed responsibility for the legal fees.
Again, unlike the parties in Tull, Bifano, Anderson and Marino here were engaged in a corporate set-up to pursue projects similar to the Gorham enterprise. While the acquisition of the property never materialized, the relationship among themselves had been established. Indeed, again as noted, the Draft Report acknowledges that Anderson and Marino agreed that the attorneys’ fees should be expenses of the Gorham “enterprise” if successful. Draft Report, pages 7-8. Thus the Trial Judge’s finding and ruling in favor of Bifano was warranted.
For these reasons the appeal of the disallowance of the Draft Report of Anderson and Marino is denied.