MacDonald, D. Lloyd, J.
Before the Court is the defendant James Georgaklis’s (“Georgaklis’s”) motion for summary judgment. The motion is ALLOWED.

Pertinent Undisputed Facts

In March 2003 Georgaklis and third-party defendants Diane Churchill (“Churchill”) and Richard Nieboer (“Nieboer”) together purchased a house on Nantucket at 6 Beaver Street. Georgaklis contributed 50% of the purchase price and Churchill and Nieboer contributed the remaining 50%. It was intended to be a vacation/weekend house to be shared between the three. They intended, as well, to rent it when they weren’t using the house as a way to offset the carrying costs of the properly. To facilitate financing, the three decided that the property would be purchased in the name of Churchill alone, and it was. The title is exclusively in Churchill’s name.
Churchill also obtained insurance for the property in her name. Coverage was issued by the plaintiff Massachusetts Property Insurance Underwriting Association (“MPIUA” or “Plaintiff’). The cost of insurance was shared 50% Georgaklis and 50% Churchill and Nieboer.
Thereafter, Georgaklis, Churchill and Nieboer renovated the property. Georgaklis had a general contractor’s license, and the building permit was issued to him as general contractor. Georgaklis thereafter engaged contractors and oversaw the project. Nieboer assisted him in doing so. The costs of the renovation were shared according to the same 50-50 split as occurred with the purchase of the property and the insurance coverage.
On or about May 12, 2003 a fire of undetermined origin occurred at the premises, and significant dam *267 age was incurred. Churchill submitted a claim to MPIUA, and MPIUA made payment pursuant to the policy for the amount of the loss, which totaled $489,525.23.

Positions of the Parties

Thereafter, MPIUA as Churchill’s subrogee brought the present action against Georgaklis, alleging negligent supervision of the plumbing contractor. The plumbing contractor’s negligent work was the alleged direct cause of the fire. Georgaklis responds that he is immune from suit for negligence because he, Churchill and Nieboer acquired and thereafter held and improved the premises as joint venturers.[1] Georgaklis submits that as joint venturers, they are subject to the same principles of liability as if they were partners. See Zimmerman v. Bogoff, 402 Mass. 650, 660 (1988). As between partners, there is only liability for acts “amounting to fraud, bad faith, or reckless disregard of [one’s] obligations.” Hunter v. Larabee, 224 Mass. 218, 220 (1916).
MPIUA accepts these principles but denies that a joint venture existed. Plaintiff submits that it was not Georgaklis’s, Churchill’s and Nieboer’s intent to make a profit from their purchase and ownership of the premises. As such, MPIUA submits that a necessary element for a joint venture was lacking.

Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving pariy is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Casseso v. Commissioner of Corrections, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).

Application to the Facts

It is clear to the Court from the summary judgment record that Georgaklis, Churchill and Nieboer purchased the property as a weekend/vacation home. It is further clear that they intended to share the costs of upkeep and the occasional rents they received (or intended to receive) when they leased the premises to third parties to generate funds for upkeep.
A challenge for Georgaklis at summary judgment is that there is no precise definition of the components necessary to the existence of a joint venture. Rather, it depends on certain “considerations” which “if present or absent, may bear upon the recognition” of a joint venture. Shain Investment Co. v. Cohen, 15 Mass.App.Ct. 4 (1982). These are:
1.[A]n agreement by the parties manifesting their intention to associate for joint profit not amounting to a partnership or a corporation;
2. [A] contribution of money, property, effort, knowledge, skill, or other assets to a common undertaking;
3. [A] joint property interest in all or parts of the subject matter of the venture;
4. [A] right to participate in the control or management of the enterprise;
5. [A]n expectation of profit;
6. [A] right to share profits;
7. [A]n express or implied duty to share in losses; and
8. [A] limitation to a single undertaking (or possibly a small number of enterprises).
Id. at 9.
The evidence as to the “profit” motive underlying the purchase and holding of the property was equivocal. The Plaintiff cites to the answer given by Nieboer in the course of his deposition as evidence that a material issue of fact exists. Nieboer was asked the question, “At any point, was the purpose of the joint venture to generate income for the three of you?” He answered, “No.”
Georgaklis counters that Nieboer testified further as to the purpose of the joint venture in these terms:
A. To buy property on Nantucket. We go there a lot.
Q. Did this joint venture ever have as a purpose to earn profits by rental of properly on Nantucket?
A. That wasn’t the specific purpose.
Q. Did the joint venture have as desired [effect] that it would earn money?
A. Part of the reason.
Q. What was the other part of the reason?
A. To have a home on Nantucket.
However, the SJC has said that the “key requirement” in determining whether a joint venture exists is “an intent to associate.” Gurry v. Cumberland Farms, 406 Mass. 615, 623 (1990). The Court elaborated: “[F]actors indicating such an intent include an agreement among the participants for joint profits and a sharing of losses; a contribution of money, assets, talents, etc. to a common undertaking; a joint properly interest in the subject matter of the venture; and a right to participate in the control of the venture,” citing Cardullo v. Landau, 329 Mass. 5, 9 (1952). Id. at 623-24.
Applying the Gurry factors to the factual record before the Court, the Court concludes as a matter of law that a joint venture existed. There is no issue of material fact as to Georgaklis’s and his co-owners’ “intent to associate.” Similarly, there is no issue as to the other factors identified by the SJC in Gurry.
There is, as noted above, equivocal evidence on the specific issue as to role of the principals’ profit motive in undertaking to purchase and hold the properly, but *268 that issue is not material given the uncontradicted record as to joint nature of the undertaking and the explicit understanding among the participants as to shared expenses and revenues.
The result here is consistent with the policy interests and related principles underlying the immunity of partners and joint venturers to claims of their partners and co-venturers based on simple negligence. The proposition of law was stated in Hunter v. Larabee, supra at 220: “There is no general principle of partnership which renders one partner liable to his copartners for his honest mistakes . . . Each partner owes to the firm the duty of faithful service according to the best of his ability.” As noted above, the MPIUA does not dispute that such immunity holds if a joint venture were to be proved. In light of the undisputed nature of the fiduciary relationship between Georgaklis, Churchill and Nieboer with regard to their Nantucket property, it would be inconsistent with the principle of Hunter v. Larabee to expose Georgaklis to liability for an alleged “honest mistake.”
The Court is mindful of the SJC’s dictate in Gurry that “[w]hen the issue of a party’s intent constitutes the essential element of a cause of action or defense, the granting of summary judgment is disfavored." Id. at 624. However, on the record before the Court, there is no factual issue as to the participants’ intent with regard to the elements that define the essence of a joint venture. Thus, there is no reason to prolong the litigation.

ORDER

The defendant’s motion for summary judgment is ALLOWED.

 In their answer to Georgaklis’s third-party complaint, Churchill and Nieboer admitted to all of Georgaklis’s material factual allegations as to the origin, terms and structure of their joint purchase and ownership of the Nantucket premises. In addition, they specifically admitted to the description of the undertaking as a “joint venture.” See Richard Nieboer and Diane Churchill a/k/a Diane Nieboer Answer to Third-Party Complaint at s 6-15.