**Rocco LAUDANO, Plaintiff**

v.

**214 SOUTH STREET CORPORATION, INC. and James Martorilli and Marla Martorilli, Defendants.**

**Civil Action No. 06–10217–RCL.**

United States District Court, D. Massachusetts.

April 17, 2009.

---

Michael L. Altman, Kristen M. Stathis, Theresa A. Labriola, Altman Riley Esher LLP, Boston, MA, for Plaintiff.

Peter J. Haley, WolfBlock LLP, Leslie F. Su, The Gordon Law Firm, Boston, MA, Shannon McCarthy, Jandorf Marshall Law Group, Mary L. Marshall, Marshall Law Group, Wellesley, MA, for Defendants.

## MEMORANDUM OF DECISION

YOUNG, District Judge.

I.   INTRODUCTION ...............................................187
     A.   Procedural Posture ...................................187
     B.   Case Stated...........................................188
     C.   Federal Jurisdiction .................................188

II.  FINDINGS OF FACT .........................................188
     A.   Hotel Purchase and Development........................188
     B.   Laudano's Employment and Compensation.................189
     C.   Marla Martorilli's Role in the Business ..............190
     D.   Sale of Woburn Hotel and Property ....................191

III. RULINGS OF LAW ...........................................191
     A.   Breach of Contract Claims.............................191
     B.   Breach of Implied Covenant of Good Faith and Fair Dealing ...195
     C.   Intentional Interference With Contract................195

IV.  CONCLUSION................................................196

## I.  INTRODUCTION

Plaintiff Rocco Laudano ("Laudano") brought an action against defendants James Martorilli ("Martorilli"), his wife Marla Martorilli ("Marla"), and 214 South Street Corporation, Inc. ("South Street"), (collectively, the "Defendants") alleging breach of contract, breach of the implied covenant of good faith and fair dealing, intentional interference with a contract, and unfair and deceptive business prac- tices in violation of Massachusetts General Laws chapter 93A sections 2 and 11. Docket No. 13. The Defendants moved for summary judgment, which all parties agreed might be treated as a case stated.

### A.  Procedural Posture

On February 2, 2006, Laudano filed a complaint against South Street, Martorilli and his wife Marla alleging breach of con- tract, breach of the implied covenant of

good faith and fair dealing, unfair and deceptive practices in violation of Massachusetts General Laws chapter 93A, sections 2 and 11; and intentional interference with contract. Docket No. 1. On April 12, 2006, the Defendants filed a motion to dismiss. Docket No. 9. Laudano filed an opposition to the motion to dismiss on May 1, 2006. Docket No. 11. On May 3, 2006, Laudano filed an amended complaint against all the Defendants. Docket No. 13. In the amended complaint, Laudano alleges eight counts: two counts of breach of contract; two counts of breach of the implied covenant of good faith and fair dealing; three counts of engaging in unfair and deceptive business practices in violation of Massachusetts General Laws chapter 93A, sections 2 and 11; and one count of intentional interference with contract. Docket No. 13.

On October 2, 2006, the Court granted in part and denied in part the Defendants' motion to dismiss the amended complaint. The Court granted the motion to dismiss Counts IV and VI, the chapter 93A sections 2 and 11 claims, ruling that Chapter 93A claims cannot be raised in the context of a joint venture or employment relationship. The Court denied the motion to dismiss as to the remaining counts.

Thereafter, the parties engaged in protracted procedural skirmishing irrelevant to the merits.

On December 9, 2008, the Court commenced hearing the Defendants' motion for summary judgment. During that hearing, the parties agreed to have the case decided on the record before the Court as a case stated. On January 15, 2009, the Court heard closing arguments from both parties for judgment on the stipulated record and took the matter under advisement.

**B. Case Stated**

In lieu of summary judgment, the parties have agreed to proceed with a "case stated" hearing after which the Court will make a judgment based on the record. "In a case stated, the parties waive trial and present the case to the court on the undisputed facts in the pretrial record." *TLT Constr. Corp. v. RI, Inc.*, 484 F.3d 130, 135 n. 6 (1st Cir.2007). Accordingly, the First Circuit noted that case stated hearings may provide an efficacious procedural alternative to cross motions for summary judgment. *Continental Grain Co. v. Puerto Rico Mar. Shipping Auth.*, 972 F.2d 426, 430 n. 7 (1st Cir.1992). In contrast to summary judgment where the Court must draw all reasonable inferences in favor of the nonmovant, in a case stated the Court is "entitled to 'engage in a certain amount of factfinding, including the drawing of inferences.'" *TLT Constr. Corp.*, 484 F.3d at 135, n. 6 (quoting *United Paperworkers Int'l Union Local 14 v. Int'l Paper Co.*, 64 F.3d 28, 31 (1st Cir. 1995)).

**C. Federal Jurisdiction**

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The Court has supplemental jurisdiction over the Massachusetts state law claim pursuant to 28 U.S.C. § 1367.

**II. FINDINGS OF FACT**

**A. Hotel Purchase and Development**

The 214 South Street Corporation, Inc. ("South Street") has a principal place of business located in Waltham, Massachusetts. James Martorilli ("Martorilli") is the president of South Street. His wife, Marla, is involved in his business ventures. Both Martorillis are residents of Massachusetts. In early 2005, Martorilli's attorney Robert Eberle ("Eberle") told Martorilli that Laudano had informed him of an opportunity to purchase property in Woburn, Massachusetts. The property included a Radisson Hotel (hereinafter the

"Hotel" or the "Property"). On April 7, 2005, South Street entered into an initial Hotel Purchase and Sale Agreement with the Woburn Hotel Massachusetts II LP to purchase the Hotel located at 15 Middlesex Canal Park Road, Woburn, Massachusetts. In May 2005, Martorilli formed a Massachusetts limited liability company, Woburn Hotel, LLC ("Woburn Hotel"). Woburn Hotel, instead of 214 South Street, was the purchaser of the Property. Woburn Hotel is managed by Martin Reilly Realty, Inc. Martin Reilly Realty, Inc. is a real estate venture with Martorilli as the president and sole shareholder. Martorilli also formed the Hospitality Management Corporation of America, Inc. ("Hospitality") in May 2005. Hospitality was formed for the purpose of leasing and operating the Hotel. All of the Hotel employees were employed by Hospitality.

On June 23, 3005, the Property was purchased by the Woburn Hotel. Martorilli, or entities under his control, accumulated the funding used for the acquisition of the property. The hotel on the Property was converted from a Radisson Hotel to a Holiday Inn Select. Laudano assisted with the hotel conversion process. Since opening in June 2005, the Property operated at a loss.

### B. Laudano's Employment and Compensation

In 2002, Laudano was working as the general manager for a Holiday Inn hotel in Peabody, Massachusetts. Martorilli approached Laudano and asked him to participate in a joint venture, offering that South Street would provide the necessary capital to purchase a suitable hotel; employ Laudano as the general manager of the hotel; and convey to Laudano a 3–5% equity interest in the company controlling the purchased hotel. In return, Laudano would locate a suitable hotel, negotiate the acquisition, and operate the hotel.

Laudano had several brief conversations with Martorilli about his compensation from the beginning of the deal, months before the conversation where he claims he was offered lifetime employment. Laudano Dep. 89:10–23, Oct. 18, 2007. In these earlier conversations, Martorilli offered to pay Laudano $85,000 (the same as his Holiday Inn salary), as well as food, lodging, and a bonus. *Id.* On June 9, 2005, Laudano discussed his compensation in a meeting with Martorilli and John Ciaramaglia ("Ciaramaglia"), an employee and close associate of Martorilli's. Laudano Dep. 86:23–89:23. Laudano told Martorilli that he wanted a two-year contract so that he could continue providing medical care for his then teenage daughter. Martorilli responded that Laudano would receive up to $125,000, need never "worry about a contract", and that he was "like [Martorilli's] brother." Laudano Dep. 87:21–23. Finally, Martorilli stood up, kissed Laudano's cheek and told him that he had "a job for life." Martorilli disputes that these words constituted an effective offer of lifetime employment. That night after this meeting, Laudano gave notice to his Holiday Inn employers. Laudano Dep. 88:1–8.

There is not a single document corroborating Laudano's claim that he had an agreement for lifetime employment as general manager of the Hotel, or that he would be given an equity interest in the Woburn Hotel. Laudano concedes that he was not sure whether his alleged equity interest would come to 3, 4, or 5 percent of the equity. In addition, Laudano cannot enumerate the factors that would be considered in the calculation of his alleged equity interest.

After the conversations with Martorilli, Laudano continued discussing his employment arrangement details with Martorilli's attorney Eberle. Laudano testified:

Robert Eberle told me from the day one that we got into Woburn that he was going to guarantee me that I would have it in writing before the day we opened. He said on numerous times to me, The [sic] only reason this is taking so long is that Jim [Martorilli] says that the financial package is not complete yet but once the financial package is complete, Rocco, you will have it in writing.

Laudano Dep. 103:17–104:2. The record indicates that Eberle did not finalize "the financial package," at any point during Laudano's employment.

Upon the purchase of the Property, Laudano became the general manager of the Hotel. As general manager, Laudano was responsible for the day-to-day operations of the Hotel which included hiring staff and reporting to Hospitality. His compensation included numerous amenities including room and board for himself and his teenage daughter, health insurance, four weeks paid vacation and unlimited sick days, a company car, auto insurance, gas money, drycleaning, and various utilities including telephone, internet access and cable television. Laudano Aff. ¶¶ 4–7.

On August 23, 2005, Martorilli fired Laudano as general manager. The Defendants contend the Property was losing money and that in late July-early August 2005, Martorilli weighed myriad factors before making the decision to terminate Laudano's employment. The factors include Laudano's hiring of two employees during a hiring freeze, failing to provide revenue reports to Martorilli upon request, and making derogatory statements about the Hotel management and owners in front of a Hotel employee and Martorilli's attorney Eberle. Laudano disputes the veracity of each of Martorilli's cited reasons for his termination.

After terminating Laudano, Martorilli offered him eight weeks of severance pay. Laudano testified that he refused the severance pay because he felt it was not commensurate with his efforts. Instead, he received unemployment compensation. Laudano Dep. 193:19–194:9. Laudano remained unemployed from August 23, 2005 until December 31, 2005. Laudano Aff. ¶¶ 9–10. On March 1, 2006, Laudano began his employment as the general manager at the Vacation Village Parkway in Orlando, Florida where he resides presently. *Id.* His salary at Vacation Village has increased yearly from $75,000 in 2006 to $82,000 in 2007 and $89,000 in 2008. *Id.* at ¶ 10. Laudano is currently making $93,000. Although his current salary is higher than his previous salary at the Hotel, Laudano has calculated the difference in compensation benefits from his change of employment at a total of $38,664 for 2008, $36,996 in 2007, and $30,580 in 2006. *Id.* at ¶¶ 13–15. In addition, Laudano estimates the moving expenses from Massachusetts to Florida as $17,258. *Id.* at ¶ 12. In total, Laudano claims that as a result of his termination he incurred a total of $123,498 in damages. *Id.* at ¶ 16.

## C. Marla Martorilli's Role in the Business

Marla was involved in the purchase of the Property. Prior to June 2005, she attended several meetings with Martorilli and Ciaramaglia. During these meetings, they discussed the feasibility, financial issues, and goals for the Property. Eberle was present at some of these meetings as well. After the Property was purchased, Marla served in an unpaid position as chief operating officer of Hospitality. Her duties at the Hotel included redecorating its interior and restaurant. Marla was not aware of the details of any employment contract between Laudano and Hospitality. Laudano had several disagreements with Marla over Hotel finances. The day of his termination, Ciaramaglia indicated to Lau-

dano that Marla was the reason for Laudano's termination.

### D. Sale of Woburn Hotel and Property

Since its opening in June 2005, the Property, including the Hotel operated at a loss. Laudano did not share in any way in the Property's losses. In response to a default letter from its secured lender received April 8, 2008, Woburn Hotel entered into a written agreement to sell the Property to Hilltop 15 Middlesex LLC ("Hilltop") for its outstanding loan balance of $8,897,353.95 plus transaction costs of $275,000. The transaction costs were used to pay attorney's fees and brokerage costs. Martorilli Aff. ¶ 17. The agreement between Woburn and Hilltop provided for a sum of $150,000 to be paid to Martorilli in consideration for his assistance and cooperation in operating the Hotel until the closing date of the agreement. On July 22, 2008, Woburn Hotel deeded the Property to Canal Park REO, LLC, an entity formed by the purchaser to take title to the Property, in lieu of foreclosure, for the principal amount of the first mortgage note-$8,850,000. Martorilli Aff. ¶ 19. Aside from the consideration paid to Martorilli, however, none of the other Defendants received any payment or benefit from the proceeds or sale of the Property.

### III. RULINGS OF LAW

On October 2, 2006, the Court dismissed Counts IV and VI, the Massachusetts General Law chapter 93A, sections 2 and 11 claims against South Street and Martorilli, respectively. On September 23, 2008, the parties stipulated to the dismissal of Count VIII, the Massachusetts General Laws chapter 93A claims against Marla. Docket No. 67. Remaining are Counts I and II, Laudano's breach of contract claims against defendants South Street and Martorilli, respectively; Counts III and V, plaintiff's breach of the implied covenant of good faith and fair dealing claims against South Street and Martorilli, respectively; and Count VII, Laudano's intentional interference of contract claim against Marla.

Laudano alleges that he is entitled to judgment because his termination breached his lifetime employment contract. He also claims that based on his joint venture, he is owed 3 to 5 percent of the equity in the Hotel; Laudano estimates this equity amount will exceed the proceeds from sale of the hotel minus the mortgage. The Defendants contend that they are entitled to judgment because the parties were not engaged in a joint venture and Laudano did not have an enforceable contract either with Martorilli and South Street for lifetime employment or an equity interest in the Hotel as the contract terms, as described, are too indefinite to constitute an enforceable contract. Moreover, they assert that the alleged oral agreement is unenforceable under Massachusetts General Laws chapter 259, section 7, the state statute of frauds.

### A. Breach of Contract Claims

### 1. Laudano's Claims Are Not Barred by the Massachusetts Statute of Frauds

The Defendants contend that the alleged oral contract is unenforceable under the Massachusetts statute of frauds because Laudano did not have a written agreement to act as a broker or finder. The statute of frauds, however, does not prohibit either joint ventures or lifetime contracts. Moreover, the law of the case doctrine prevents the Defendants from here raising the statute of frauds argument when they already lost this argument at the motion to dismiss stage.

Under Massachusetts General Laws chapter 259, section 7, an oral contract to identify a business opportunity is unenforceable. At the motion to dismiss hear-

ing held October 2, 2006, the Court considered and rejected the Defendants' statute of frauds argument that Laudano's alleged oral contract is unenforceable because it is not in writing, ruling that the alleged oral contract at issue here went farther than a finding fee and included the alleged lifetime employment as well. The Defendants are correct in their assertion that Laudano's Second Amended Complaint alleges neither South Street nor Martorilli compensated him as agreed for his services in identifying or negotiating their purchase of a business. Laudano does not claim, however, that his contract was an offer to identify a business opportunity. At the time of the pertinent conversations regarding his employment, Laudano had already identified the hotel property and worked with Martorilli and Eberle on its conversion. Laudano asserts that the oral contract was not simply consideration for his services as a broker or finder for the hotel property, but an offer to engage in a joint venture and lifetime employment based on his unique experience and skills in the industry. This Court ruled, therefore, that Massachusetts General Laws chapter 259, section 7 is inapplicable.

██ Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Naser Jewelers, Inc. v. City of Concord, N.H.*, 538 F.3d 17, 20 (1st Cir.2008) (quoting *Arizona v. California*,

460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983)). The Defendants are not raising new arguments nor introducing new evidence on the matter. Therefore, the Defendants' statute of frauds argument is barred from consideration now since the Defendants already raised this argument during their motion to dismiss and were unsuccessful. *See id.* at 20 (holding law of the case doctrine applicable where plaintiff repeated arguments and exhibits that had been considered during a previous hearing without offering new evidence).[1]

### 2. Laudano Cannot Establish the Parties' Intent to Form a Joint Venture

██ While Laudano's claims are not defeated by the statute of frauds, he is nonetheless unable to establish that the parties intended to form a joint venture. The balance of factors do not tip in favor of finding that the parties intended to create a joint venture. "As between the parties, as in the case of a partnership, the relationship of joint adventurers is a matter of intent and arises only when they intend to associate themselves as such." *Cardullo v. Landau*, 329 Mass. 5, 8, 105 N.E.2d 843, 845 (1952).

In *Shain Inv. Co., Inc. v. Cohen*, 15 Mass.App.Ct. 4, 8–9, 443 N.E.2d 126, 130 (Mass.App.1982), the court provided a list of several factors that may serve as a "pragmatic checklist" for ascertaining the

---

1. Assuming *arguendo* that the Defendants were not precluded by the law of the case doctrine from making a statute of frauds argument, the argument would, nonetheless, fail as matter of law. The Massachusetts statute of frauds renders unenforceable certain types of contracts, including any unwritten contract governing conduct that cannot be performed within a year. Joint venture agreements may be created orally under Massachusetts law. *B & R Realty Co. v. Springfield Redevelopment Auth.*, 708 F.Supp. 450,

456–57 (D.Mass.1989) (Freedman, C.J.). Courts have held lifetime employment contracts are an exception to the statute of frauds. *Whelan v. Intergraph Corp.*, 889 F.Supp. 15, 17 (D.Mass.1995) (Lindsay, J.). Courts have reasoned that although a lifetime contract may extend for years, it may be concluded within a year. *Id.* The business could fold within the year or the employee may become deceased. "The statute of frauds will thus not defeat an otherwise enforceable oral contract for lifetime employment." *Id.*

presence of a joint venture. The *Shain* court enumerated the following:

> (1) an agreement by the parties manifesting their intention to associate for joint profit not amounting to a partnership or a corporation; (2) a contribution of money, property, effort, knowledge, skill, or other assets to a common undertaking; (3) a joint property interest in all or parts of the subject matter of the venture; (4) a right to participate in the control or management of the enterprise; (5) an expectation of profit; (6) a right to share in profits; (7) an express or implied duty to share in losses; and (8) a limitation to a single undertaking (or possibly a small number of enterprises).

*Id.* at 9, 443 N.E.2d 126. In *Gurry v. Cumberland Farms, Inc.*, the court succinctly describes these factors as "an agreement among the participants for joint profits and a sharing of losses; a contribution of money, assets, talents, etc., to a common undertaking; a joint property interest in the subject matter of the venture; and a right to participate in the control of the venture." 406 Mass. 615, 623–24, 550 N.E.2d 127, 133 (1990). Although not dispositive, the sharing of losses is a significant factor indicating the existence of a shared venture. *Shain*, 15 Mass.App.Ct. at 8–9, 443 N.E.2d 126.

█ While Laudano's knowledge of the hotel industry and his skills as a hotel manager were an asset to the business, his conduct notably lacks other joint venture indications. Laudano concedes that he did not share in the venture's losses or expenses, was uncertain about the exact percentage of his potential shared profits, and had a limited right to participate in the control of the venture. Martorilli created various entities to finance and facilitate the purchase and maintenance of the Property. Laudano was not a stockholder, partner, or affiliate of any of Martorilli's entities

relating to the Property's purchase or maintenance, e.g. Hospitality or 214 South Street. Had Laudano engaged in a joint venture, he would likely have had an agreement to share in any potential losses or expenses and would have definite knowledge of his percentage of shared profits. Moreover, Laudano would presumptively have had control in the management of the venture not merely as an employee but as an executive or stakeholder of the related entities. All reasonable inferences indicate that the parties did not agree to form a joint venture.

### 3. Laudano Cannot Establish Existence of an Enforceable Lifetime Contract

█ In addition to failing to establish that the parties intended to establish a joint venture, Laudano is also unable to establish that he had an enforceable lifetime contract. While every contract term does not have to be precisely defined to be enforceable, the parties must have moved beyond "the stage of 'imperfect negotiation.'" *Lambert v. Fleet Nat. Bank*, 449 Mass. 119, 123, 865 N.E.2d 1091, 1095 (2007) (quoting *Situation Mgt. Sys., Inc. v. Malouf, Inc.*, 430 Mass. 875, 878, 724 N.E.2d 699, 703 (2000)). Plaintiff cannot rely on "the kind of vague and general discussion that is common in the preliminary stages of business dealings and does not rise to the level of an enforceable agreement." *Id.* at 124, 865 N.E.2d 1091.

The Defendants argue that the alleged contract terms are too indefinite to comprise an enforceable contract. The Defendants identify several indications of indefinite contract negotiations. Although the record is devoid of any documents, e-mail or faxes reflecting the alleged equity agreement in the Woburn Hotel, Laudano testified that the terms of the alleged equity agreement were to be expressed in a

written financial package. It is undisputed that Laudano did not know whether his alleged equity interest would be 3, 4 or 5% or how the interest percentage would be calculated. The Defendants maintain that the amount of alleged equity interest (whether 3, 4 or 5%) as well as the conditions or calculation of equity percentage are essential terms of the alleged contract that must be definite in order for the contract to be enforceable.

When evaluating the intent of the parties, the best method for determining what the parties meant is to examine what they have done. *TLT Constr. Corp.*, 484 F.3d at 136. "Under Massachusetts law of contract, it is well established that 'the fact that parties contemplate the execution of a final written agreement effects a strong inference that the parties do not intend to be bound by earlier negotiations or agreements until the final terms are settled.'" *Id.* at 135 (quoting *Rosenfield v. U.S. Trust Co.*, 290 Mass. 210, 216, 195 N.E. 323, 325 (1935)). In particular, the First Circuit encourages courts to consider the relative importance of the written instrument to the party later asserting his or her rights. *Id.* (noting party did not act in reliance on contract and despite several rounds of drafts, the record indicates that having a written agreement was important to the plaintiff).

Similarly, Laudano's testimony indicates that all he had were repeated conversations with Martorilli's corporate counsel Eberle about having a written instrument expressing their oral agreement. Laudano Dep. 89:10–23. It is apparent from Laudano's testimony that both parties understood that, in light of the time sensitivity, Laudano would start his employment at the Hotel without having a written financial package. *Id.* Based on all reasonable inferences, there appears to have been an agreement to agree on the terms when finalized in a written instrument. This agreement to agree on the details of a financial package, however, does not create an enforceable contract. "Where there is an 'agreement to agree' on an essential term of a contract, there is no contract to enforce." *Cousin v. Sofono, Inc.*, 2003 WL 22391233, at *6 (D.Mass. Oct.17, 2003) (Ponsor, J.).

Unlike the plaintiff in *TLT Constr. Corp.*, Laudano relied significantly on the alleged equity contract. His reliance is best evidenced by his prompt resignation of his position at the Holiday Inn on the night he discussed the lifetime employment offer. Laudano Dep. 88:18–19. While *TLT Constr. Corp.* is factually distinguishable, the holding remains quite relevant to the case at bar. Laudano's reliance, even if detrimental, cannot automatically transform an extended negotiation into an enforceable contract. "[A] failed negotiation, even one that causes damage to one or both parties, [is not] necessarily a breach of contract." *TLT Constr. Corp.*, 484 F.3d at 136.

■ Oral contracts that have yet to be memorialized in writing may be enforceable if the parties agreed on the essential terms of the transaction. *Novel Iron Works, Inc. v. Wexler Constr. Co.*, 26 Mass.App.Ct. 401, 407, 528 N.E.2d 142, 146 (1988) (citing *Rosenfield*, 290 Mass. 210 at 215, 195 N.E. 323). The marked absence or omission of key terms or definitions, however, undermines Laudano's claims to an enforceable contract. An alleged oral contract is unenforceable if it is silent on "essential terms." *Held v. Zamparelli*, 13 Mass.App.Ct. 957, 958, 431 N.E.2d 961, 962 (1982) (essential terms include but are not limited to when plaintiff's share of the profits would be computed and dispersed, the duration of agreement, and plaintiff's responsibility if there arose a claim against the property). Laudano's inability to articulate the specific equity interest per-

centage (either 3, 4, or 5%) or how his alleged equity percentage would be calculated substantially weakens his breach of contract claims. Laudano Dep. 104: 13–22. Laudano claimed that his employment would include lodging, food and a bonus. Laudano Dep. 89:10-23. Although Laudano enumerates the damages resulting from a loss of these amenities in his affidavit, the terms and conditions for the alleged bonus are also vague and uncertain. *Tharpe v. Cisco Sys., Inc.*, 2008 WL 687416, *1 (D.Mass.2008) (Zobel, J.) (holding plaintiff cannot maintain a breach of contract claim where plaintiffs have only alleged an oral agreement regarding a percentage range without any agreement as to how that percentage range will be calculated or the duration of the agreement). The percentage point of equity interest and the method of calculation are essential terms that are material to establishing the enforceability of the alleged oral contract. Based on the record, as matter of law, Laudano cannot prevail in a breach of contract claim.

In conclusion, the terms of the alleged oral contract are too indefinite to be enforceable.

### B. Breach of Implied Covenant of Good Faith and Fair Dealing

■ Laudano cannot prevail on a claim that the Defendants have breached an implied covenant of good faith and fair dealing because he does not have an enforceable contract. The essential inquiry into whether or not there is a breach of an implied covenant of good faith and fair dealing is determined by whether "the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance." *Speakman v. Allmerica Fin. Life Ins.*, 367 F.Supp.2d 122, 132 (D.Mass.2005) (Saylor,

J.). The scope of the covenant is governed by the particular contractual relationship. *Liss v. Studeny*, 450 Mass. 473, 477, 879 N.E.2d 676, 680 (2008). "The covenant 'may not . . . be invoked to create rights and duties not otherwise provided for in the existing contractual relationship.' " *Id.* (quoting *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385, 805 N.E.2d 957, 964 (2004)).

■ Irrespective of the Defendants' intentions in their business dealings with Laudano, there is no breach of the implied covenant claim because there is no enforceable contract. *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005). "[T]he implied covenant of good faith and fair dealing governs conduct of parties after they have entered into a contract; without a contract, there is no covenant to be breached." *Id.* The indefiniteness of Laudano's alleged oral contract terms, as detailed above, prohibits him from sustaining a claim against either Martorilli or South Street for breaching the implied covenant of good faith and fair dealing. "Where, as here, the parties have not yet reached a binding agreement, there is no duty to negotiate in good faith." *Id.*

Laudano's breach of the implied covenant of good faith and fair dealing claims fail since he is unable to establish that he had an enforceable contract.

### C. Intentional Interference With Contract

■ Laudano fails to come forward with facts sufficient to sustain the elements of an intentional interference claim. In tortious interference with contract claims, a plaintiff must prove allegations of each element necessary for the tort. "Under Massachusetts law, the elements of the tort are (i) the existence of a business relationship, (ii) of which the defendant is

196

aware and (iii) with which the defendant intentionally and improperly interferes, (iv) causing impairment of the relationship to the plaintiff's detriment." *Kouvchinov v. Parametric Tech. Corp.*, 537 F.3d 62, 70 (1st Cir.2008). Additionally, a plaintiff must establish improper conduct, "which may include ulterior motive (e.g., wishing to do injury) or wrongful means (e.g., deceit or economic coercion)." *Luciano v. Coca–Cola Enter., Inc.*, 307 F.Supp.2d 308, 323 (D.Mass.2004) (Stearns, J.) (citation omitted).

■ In his deposition, Laudano testified that Marla was unaware that he had a lifetime contract. Laudano Dep: 195:14–23. Marla also testified that she was not cognizant of any employment contract between Laudano and South Street or Martorilli. Marla Martorilli Aff. ¶ 4. "Under Massachusetts law, one cannot tortiously interfere with a contract that one reasonably believes is not in existence." *Walker v. Waltham Hous. Auth.*, 44 F.3d 1042, 1048 (1st Cir.1995). It is axiomatic that a defendant cannot intentionally and tortiously interfere with a contract when she is unaware of its existence. Therefore, Laudano's intentional interference with contract claim fails.

## IV. CONCLUSION

For the reasons stated above, this Court holds that Laudano did not have a joint equity venture either with State Street or James Martorilli or an enforceable contract for lifetime employment. Further, Marla Martorilli did not tortiously interfere with Laudano's contract where the record shows she was unaware of its existence. Judgment shall enter for the Defendants.

SO ORDERED.